Argued and submitted September 24, 1993, affirmed July 27, petition for review allowed November 29, 1994 (320 Or 407)

In the Matter of the Compensation of
Robert G. Fuls, Claimant.

Robert G. FULS,
*Petitioner,*

*v.*

SAIF CORPORATION,
Donald R. Garner,
Travelers Insurance Company
and Sunset Glass Company,
*Respondents.*

(WCB 91-01005, 90-17213; CA A76999)

879 P2d 869

Edward J. Harri argued the cause for petitioner. With him on the brief were Stanley Fields and Law Offices of Michael B. Dye.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondents SAIF corporation and Donald R. Garner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Jerald P. Keene and Roberts, Reinisch, Mackenzie, Healey & Wilson, P.C., filed the brief for respondents Travelers Insurance Company and Sunset Glass Company.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

**DEITS, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board denying the compensability of his conversion reaction. The Board denied compensability on the ground that the conditions that caused his conversion reaction were "generally inherent in every working situation." ORS 656.802(3)(b). We review for errors of law and substantial evidence, ORS 656.298(6), and affirm.

We take the facts as found by the referee and adopted by the Board. In 1976, claimant sustained an on-the-job injury. Multidiagnostic tests were carried out between 1976 and 1985 which revealed no pathological, orthopedic or neurological problem. A number of examiners who saw claimant believed that his condition may have had a strong psychological component. However, before February, 1990, no treatment for that condition was recommended.

In July, 1989, claimant began work as a gas attendant for Chuck's Texaco, insured by SAIF. As the Board found:

"On February 23, 1990, while at work[,] * * * he sustained a minor shaking incident when he was grabbed from behind in a 'bear hug.' This led to a complete collapse, including loss of sensation, strength in the legs, and paralysis from the neck down. Claimant was immediately seen at the emergency room where Dr. Lewis found no physical problem at all. He was diagnosed as having an hysterical reaction and discharged without treatment.

"Despite severe symptoms, claimant remained medically stationary. He returned to work on regular duty two days later. He continues to be symptomatic in the same areas as prior to the February 1990 incident. There is no change in symptoms and no new objective findings.

"He did not return to [his treating physician] until August of 1990, approximately six months after the shaking incident. Additional diagnostic tests were again negative. [His treating physician] found no new injury, no pathological worsening of the preexisting condition, and at best a recurrence of symptoms dating from the prior injuries of 1976 and 1980."

The referee concluded that claimant had not established either a new physical injury or an aggravation of a

preexisting physical condition. However, the referee concluded that claimant's claim for his conversion reaction was compensable as an accidental injury, under ORS 656.005(7), because it was caused, in material part, by the February, 1990, "bear hug." The referee rejected SAIF's argument that ORS 656.802, specifically subsection (3) of that statute relating to occupational diseases in the form of mental disorders, applied to claimant's claim for his conversion reaction. Accordingly, the referee reversed SAIF's *de facto* denial of claimant's claim for a conversion reaction.

SAIF appealed to the Board.[1] The Board adopted the referee's findings of fact, but reversed her conclusion that claimant's conversion reaction was compensable. The Board reasoned:

"The Referee concluded that claimant established the compensability of his psychological condition, based on the finding that the February 1990 work incident was a material contributing cause of the condition. In applying the 'material contributing cause' standard, the Referee rejected SAIF''s argument that the psychological condition must be analyzed as an occupational disease under ORS 656.802. The Referee reasoned, instead, that the appropriate standard is the same as that required to prove the compensability of a psychological condition following an industrial injury. On review, SAIF reasserts its argument that claimant's claim must be analyzed as an occupational disease under ORS 656.802. We agree.

"We note that claimant's psychological condition is not alleged to be a consequence of an industrial injury. Rather, it is alleged to have resulted from a February 1990 work incident in which a customer greeted him by grabbing his arms from behind and shaking him. Thus, we conclude that claimant is seeking to establish that his psychological condition is an independently compensable result of on-the-job stress.

"Subsequent to the Referee's order, the Court of Appeals held in *SAIF v. Hukari*, 113 Or App 475[, 833 P2d 1307, *rev den* 314 Or 391 (1992)], that 'any claim that a condition is *independently compensable* because it was *caused by on-the-job stress*, regardless of the suddenness of onset or the unexpected nature of the condition, and regardless of

---

[1] Claimant did not seek Board review of the referee's order.

whether the condition is mental or physical, must be treated as an occupational claim under ORS 656.802.' [Emphasis in original.] Therefore, in order to prevail in this case, claimant must satisfy the requirements of establishing a compensable mental disorder under ORS 656.802(2) and (3)." (Citation omitted.)

Claimant argues that the Board erred in holding that ORS 656.802 applied to his claim for a conversion reaction. He asserts that his conversion reaction was *not* the result of on-the-job stress; rather, he contends that the condition was the result of the "bear-hug." Claimant argues that, because of that, the referee correctly analyzed his claim for a conversion reaction as an accidental injury under ORS 656.005(7). As we will discuss, we conclude that because claimant is seeking to establish the independent compensability of a mental disorder, it must be analyzed as an occupational disease under ORS 656.802. Therefore, it is unnecessary to address the question of whether the alleged cause here was stress or the physical act of the "bear hug."

■ As noted above, the Board concluded, relying on *SAIF v. Hukari, supra,* that the claim must be analyzed under ORS 656.802 because it involved a condition that was allegedly caused by on-the-job stress. That conclusion, however, is incorrect based on a recent decision of the Supreme Court that rejected the holding that any claim based on stress must be analyzed as an occupational disease claim. *Mathel v. Josephine County,* 319 Or 235, 875 P2d 455 (1994). In *Mathel,* the court concluded that the alleged *cause* of a condition should not determine whether the claim is for an injury or a disease. Rather, it is whether the condition is an "event" or an "ongoing condition[] or state[] of the body or mind" that determines whether the claim is for an injury or a disease. *Mathel v. Josephine County, supra,* 319 Or at 242. Accordingly, a condition that is allegedly caused by stress, the onset of which was sudden and unexpected, could be an injury claim.

■ Although the Board's reason for concluding that ORS 656.802 applied to claimant's claim for a conversion reaction was faulty because of the recent decision in *Mathel,* we believe that the Board's conclusion was right for another reason. ORS 656.802(1) defines occupational disease as

"any disease or infection arising out of and in the course of employment * * * which requires medical services or results in disability or death, including:

"* * * * *

"(b) Any mental disorder which requires medical services or results in physical or mental disability or death."

ORS 656.802(3) provides that:

"*Notwithstanding any other provision of this chapter*, a mental disorder is not compensable *under this chapter*:

"(a) Unless the employment conditions producing the mental disorder exist in a real and objective sense.

"(b) Unless the employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment.

"(c) Unless there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) Unless there is clear and convincing evidence that the mental disorder arose out of and in the course of employment." (Emphasis supplied.)

Claimant agrees that his conversion reaction is properly diagnosed as a mental disorder and that his claim is an initial claim for the independent compensability of his mental disorder. ORS 656.802(1)(b) provides that an "occupational disease," for purposes of that chapter, includes *any* mental disorder which results in disability or death. In addition, ORS 656.802(3), by its express terms, applies to all claims for mental disorders under ORS chapter 656, "notwithstanding any other provisions of [the] chapter." We conclude that ORS 656.802 applies to any claim for the independent compensability of a mental disorder under ORS chapter 656.

The Supreme Court's analysis in its recent decision in *DiBrito v. SAIF*, 319 Or 244, 875 P2d 455 (1994), indicates that the court, at least impliedly, construed ORS 656.802 as applying to all initial claims for the independent compensability of a mental disorder. In *DiBrito*, the claimant, who had preexisting colitis and a preexisting personality disorder, filed a workers' compensation claim for an episode of colitis

and psychological symptoms that she alleged had resulted from a meeting with her supervisor. The Board had concluded that claimant's claim was for physical and mental conditions caused by on-the-job stress and, relying on *SAIF v. Hukari, supra*, determined that her claim was not compensable, because she had not met the requirements of ORS 656.802. In reversing the Board's order, the court held that,

"in reviewing the record of a workers' compensation claim, the Board's first task is to determine which provisions of the Workers' Compensation Law are applicable. In this case, if claimant's claim was based on her episode of colitis, whether caused by physical factors, by job stress, or by both, ORS 656.005(7) applies, because that episode is an 'event' constituting an accidental injury. If, on the other hand, her claim was based on her personality disorder, ORS 656.802 (relating to occupational diseases in the form of mental disorders) applies, and the requirements of that provision must be met, whether the cause of the mental disorder was physical, nonphysical, or both. * * * Finally, if claimant's claim encompasses both her episode of colitis and her personality disorder, the Board must analyze each claim separately under the applicable provision." 319 Or at 248-49.

In *DiBrito*, the court held that ORS 656.802 applied to claimant's claim for psychological symptoms and that ORS 656.005(7) applied to her claim for an episode of colitis, despite the fact that both conditions were sudden in onset and allegedly resulted from the same work incident. Because we hold that ORS 656.802 applies to any initial claim for the independent compensability of a condition that constitutes a mental disorder, we conclude that the Board was correct in analyzing the claim under that statute.

■    Claimant next argues that the Board erred in its conclusion that his conversion reaction was not compensable under ORS 656.802(3) because the conditions which caused it were conditions inherent in every working situation. The Board reasoned:

"We are not persuaded that the employment conditions producing claimant's conversion hysteria are conditions other than those generally inherent in every working situation. Virtually every working interaction involves some degree of interaction with co-employees and/or the public, whether it be verbal exchanges or physical contact. While we

acknowledge that not all types of interaction are generally inherent in every working situation, we recognize that those types that are inherent in every working situation vary with the individuals involved. The 'bear hug' which claimant received * * * is certainly a more physical type of interaction; however, we are not prepared to find that it is outside the range of behavior that occurs in every working situation.

"For that reason, we do not find that claimant has sustained his burden of proving all of the elements of an occupational disease claim for a mental disorder under ORS 656.802(3). SAIF's denial of claimant's conversion reaction is upheld."

Here, the Board determined that the "bear-hug" that claimant received from a customer was not outside the range of behavior or physical interaction that occurs in every working situation. We agree with the Board's determination.

Affirmed.