Argued and submitted March 8, decision of the Court of Appeals and order of the
Workers' Compensation Board affirmed May 25, 1995

In the Matter of the Compensation of
Robert G. Fuls, Claimant.

Robert G. FULS,
*Petitioner on Review,*

*v.*

SAIF CORPORATION,
Donald R. Garner,
Travelers Insurance Company
and Sunset Glass Company,
*Respondents on Review.*

(WCB 91-01005, 90-17213; CA A76999; SC S41662)

894 P2d 1163

Edward J. Harri, Salem, argued the cause for petitioner on review. With him on the petition was Stanley Fields, of Law Offices of Michael B. Dye, Salem.

Michael O. Whitty, Special Assistant Attorney General, Salem, argued the cause for respondents on review SAIF Corporation and Donald R. Garner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jerald P. Keene, of Roberts, Reinich, MacKenzie, Healey & Wilson, P.C., Portland, argued the cause and filed the briefs for respondents on review Travelers Insurance Company and Sunset Glass Company.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this case we are called on to decide whether claimant's mental disorder resulting from an occurrence at work is an "injury" or an "occupational disease" for purposes of the Workers' Compensation Law. *See* ORS 656.005(7) (regarding compensable injuries);[1] ORS 656.802 (regarding occupational diseases).[2] We also must decide whether claimant's mental disorder was compensable. The Court of Appeals

---

[1] ORS 656.005(7) provides:

"(a) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.

"(B) If a compensable injury combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, the resultant condition is compensable only to the extent the compensable injury is and remains the major contributing cause of the disability or need for treatment.

"(b) 'Compensable injury' does not include:

"(A) Injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties;

"(B) Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure; or

"(C) Injury the major contributing cause of which is demonstrated to be by clear and convincing evidence the injured worker's consumption of alcoholic beverages or the unlawful consumption of any controlled substance, unless the employer permitted, encouraged or had actual knowledge of such consumption.

"(c) A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death.

"(d) A 'nondisabling compensable injury' is any injury which requires medical services only."

[2] ORS 656.802 provides in part:

"(1) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(b) Any mental disorder which requires medical services or results in physical or mental disability or death.

"* * * * *

affirmed an order of the Workers' Compensation Board (Board) denying compensability. *Fuls v. SAIF*, 129 Or App 255, 879 P2d 869 (1994). For the reasons that follow, we affirm.

The facts are not disputed. In 1976, claimant sustained an on-the-job injury. Diagnostic tests were carried out between 1976 and 1985 which revealed no pathological, orthopedic, or neurological problem. A number of examiners who saw claimant believed that his condition may have had a strong psychological component. However, before February 1990, no treatment for that condition was recommended.

In 1989, claimant went to work for SAIF's insured, Chuck's Texaco, as an attendant. Based on an incident that occurred at work on February 23, 1990, claimant filed a workers' compensation claim with SAIF's insured.[3] SAIF denied that claim, and claimant sought a hearing.

The referee found in part:

"On February 23, 1990, while at work at Chuck's Texaco, [claimant] sustained a minor shaking incident when he was grabbed from behind in a 'bear hug.' This led to a complete collapse, including loss of sensation, strength in the legs, and paralysis from the neck down. Claimant was immediately seen at the emergency room where Dr. Lewis found no physical problem at all. He was diagnosed as having an hysterical reaction and discharged without treatment.[4]

"(3) Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter:

"(a) Unless the employment conditions producing the mental disorder exist in a real and objective sense.

"(b) Unless the employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment.

"(c) Unless there is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) Unless there is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

[3] Claimant also filed a claim with Travelers Insurance Company, alleging an aggravation of his 1976 injury. That claim was denied, and the Workers' Compensation Board upheld that denial. Although Travelers is a party to the litigation before this court, claimant's aggravation claim is not at issue here. In this opinion, the term "insurers" is used to describe both SAIF and Travelers.

[4] At the hearing, claimant described the customer's physical contact with him

"Despite severe symptoms, claimant remained medically stationary. He returned to work on regular duty two days later. He continues to be symptomatic in the same areas as prior to the February 1990 incident. There is no change in symptoms and no new objective findings.

"[Claimant] did not return to see Dr. Paluska [who had previously treated claimant for his compensable 1976 injury] until August of 1990, approximately six months after the shaking incident. Additional diagnostic tests were again negative. Dr. Paluska found no new injury, no pathological worsening of the pre-existing condition, and at best a recurrence of symptoms dating from the prior injuries of 1976 and 1980."[5]

The referee concluded that "the shaking incident of February, 1990, is not a material contributing cause of any new physical injury" and, therefore, "that claimant has not established the compensability of any new injury." The referee further found that, "[i]n the absence of any objective findings

---

as "trying to be a friendly gesture" by the customer, who was a coworker of claimant's wife, with whom claimant was acquainted. Claimant was asked: "So you wouldn't have anticipated he meant to do any harm to you at all?" Claimant replied, "No, no way."

The emergency room physician was unable to find any physical cause for claimant's subsequent collapse and diagnosed his condition as "conversion hysteria following a mild shaking by another person." Evidence was received indicating that claimant's treating physician, Dr. Paluska, believed that claimant "had a conversion reaction even before the shaking incident. This has been ongoing for years." Dr. Paluska also opined that the February 1990 event was the major contributing cause of claimant's need for treatment.

"The essential feature of [conversion disorder] is an alteration or loss of physical functioning that suggests physical disorder, but that instead is apparently an expression of a psychological conflict or need." Diagnostic and Statistical Manual of Mental Disorders 257 (3d ed (revised) 1987).

[5] The referee's ultimate findings of fact were:

"Claimant sustained no new physical injury as a result of the February, 1990 incident. There are no objective findings of any injury.

"Claimant's compensable left shoulder condition did not worsen after the February, 1990 incident. He was not more disabled and he did not need medical treatment for it. Moreover, there are no objective findings of any worsening and no pathological worsening of the underlying condition.

"Claimant has had a psychological component to his continuing problems since at least 1978, in varying degrees. The February 1990 incident produced a conversion reaction or hysteria, and resulted in a worsening of the prior psychological condition. The 1976 shoulder injury is not a material contributing cause of the need for treatment or disability resulting from the conversion reaction."

of any worsening of [his] left shoulder condition, claimant has failed to establish an aggravation of the 1976 injury."

However, concerning claimant's conversion reaction, the referee found:

"Claimant has an hysterical condition, a conversion reaction. Claimant has had an emotional condition since the 1976 injury. By Stipulation of July 10, 1978, claimant agreed that this psychological condition was not compensable and not the responsibility of Travelers.

"Following the 1990 incident, claimant was diagnosed as having a conversion reaction. This diagnosis is an actual diagnosis of a mental condition recognized in the medical community. See DSM III, Sec. 100.11. There is substantial evidence in this record to indicate that claimant has this condition, and has had at least elements of it since 1976.

"* * * * *

"The February 1990 event was the material contributing cause of the conversion reaction and need for medical treatment. Claimant has established the compensability of the conversion reaction.

"* * * * *

"[T]he 1990 event produced a new injury, a psychological condition. I have found that condition to be compensable; consequently responsibility shifts to the second carrier, here SAIF Corp."

The referee rejected SAIF's argument that ORS 656.802, specifically subsection (3) of that statute relating to occupational diseases in the form of mental disorders, applied to claimant's claim for his conversion reaction. Accordingly, the referee set aside SAIF's "*de facto*" denial of claimant's claim for a conversion reaction.

SAIF requested review by the Board, seeking to set aside the portion of the referee's order regarding the compensability of claimant's psychological condition. Claimant did not seek Board review of the referee's order.

On review, the Board adopted the referee's findings of fact. The Board described the event as follows:

"On February 23, 1990, claimant was working as a gas station attendant for SAIF's insured. While he stood at the cash register processing a credit card purchase, a customer

walked up behind him and greeted him by grasping his upper arms and briefly shaking him. Claimant immediately lost control of his legs and collapsed to the floor. He was able to stand up and walk to a chair, but then he felt completely paralyzed from the neck down. He was taken to the hospital emergency room strapped to a back board with a cervical collar. Approximately four hours later, claimant felt severe pain from his neck to his feet. He was diagnosed with conversion hysteria."

The Board agreed with SAIF that claimant's claim should be analyzed as an occupational disease claim. The Board reversed the referee's conclusion that claimant's conversion reaction was compensable. Claimant sought judicial review.[6]

The Court of Appeals affirmed, concluding that, because claimant is seeking to establish the independent compensability of a mental disorder, his claim must be analyzed as an occupational disease claim under ORS 656.802. *Fuls*, 129 Or App at 261. The court found that claimant's claim was for an "occupational disease" and agreed with the Board's determination that claimant's February 1990 workplace incident was not compensable, because the greeting from the customer "was not outside the range of behavior or physical interaction that occurs in every working situation." *Id.* at 262.

On review in this court, claimant argues that his condition is an injury, not an occupational disease, because it had a "sudden onset" and, therefore, that ORS 656.802(3) does not apply. Alternatively, claimant argues that, if ORS 656.802(3) does apply, "conditions generally inherent in every working situation" cannot include acts such as the customer's shaking of claimant, which claimant describes variously as "unconsented," "unlawful," "criminal," or "tortious."

---

[6] The Board relied on *SAIF v. Hukari*, 113 Or App 475, 480, 833 P2d 1307, *rev den* 314 Or 391 (1992), which had held that a claim that "a condition is *independently compensable* because it was *caused by on-the-job stress*, regardless of the suddenness of onset or the unexpected nature of the condition, and regardless of whether the condition is mental or physical, must be treated as a claim for an occupational disease under ORS 656.802." (Emphasis in original.) The Court of Appeals noted, however, that this court has "rejected the holding [in *Hukari*] that any claim based on stress must be analyzed as an occupational disease claim." *Fuls*, 129 Or App at 256 (citing *Mathel v. Josephine County*, 319 Or 235, 875 P2d 455 (1994)).

SAIF responds that the text of ORS 656.802(3) establishes that any mental disorder must be treated as an occupational disease under the Workers' Compensation Law, and that this interpretation is consistent with this court's recent pronouncements in *Mathel v. Josephine County*, 319 Or 235, 241-42, 875 P2d 455 (1994), and *DiBrito v. SAIF*, 319 Or 244, 875 P2d 459 (1994). SAIF also asserts that the text, context, and legislative history of ORS 656.802(3) indicate that a customer's physical greeting of a worker, such as the one shown here, is a condition generally inherent in every working situation and, thus, a mental disorder caused by such conduct is not compensable.

■ This court's task is to discern the legislative intent behind ORS 656.802, in order to determine whether a condition such as claimant's is to be treated as an "occupational disease" under that statute. The text of that statute is the starting point for interpretation. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (describing method of statutory construction).

Claimant argues that, despite the language of ORS 656.802, a "sudden onset injury in the form of a mental disorder" should not be analyzed under ORS 656.802 but, rather, should be treated as an "injury," as defined in ORS 656.005(7). It is true that this court's cases have drawn a distinction between occupational diseases and occupational injuries along the lines that occupational diseases are gradual rather than sudden in onset. *See, e.g., James v. SAIF*, 290 Or 343, 624 P2d 565 (1981) (so indicating); *see also Mathel*, 319 Or at 240-42 (citing *James*, noting that heart attack was sudden onset condition, and rejecting argument that it was an occupational disease). However, ORS 656.802(1)(b) specifically includes "[a]ny mental disorder" within the definition of "occupational disease," without regard to the suddenness of its onset.

Claimant concedes that the condition for which he seeks compensation — conversion disorder — is a mental disorder. *See* Diagnostic and Statistical Manual of Mental Disorders 257-59 (3d ed (revised) 1987) (describing features of "conversion disorder" or "hysterical neurosis, conversion type"). Our analysis of the statute proceeds from that concession. Because the sole condition for which claimant seeks

compensation is a "mental disorder" by claimant's concession, his claim is not compensable, pursuant to the unambiguous terms of ORS 656.802(3), unless paragraphs (a) through (d) of that subsection are satisfied.

We next turn to the question whether claimant's mental disorder is compensable under ORS 656.802.[7] The dispute centers on ORS 656.802(3)(b), over whether the conditions that produced claimant's need for treatment for his conversion disorder were "conditions other than conditions generally inherent in every working situation."

Before we analyze the statute, we reiterate the Board's finding as to the nature of the "employment conditions" that produced claimant's conversion disorder. A customer, with whom claimant was acquainted, "walked up behind him and greeted him by grasping his upper arms and briefly shaking him."

Our purpose is to discern whether the legislature intended to exclude mental disorders produced by such contacts from compensation under the Workers' Compensation Law, on the basis that such contacts are "conditions generally inherent in every working situation." *PGE*, 317 Or at 611-12.

We turn to the text of the relevant portion of ORS 656.802(3): "conditions generally inherent in every working situation." Something that is "inherent" is "structural or involved in the constitution or essential character of something: belonging by nature or settled habit." Webster's Third New Int'l Dictionary (unabridged ed 1993), 1163. "Every" includes "each individual or part of a class or group whether definite or indefinite in number without exception." *Id.* at 788. We conclude that the phrase "conditions generally inherent in every working situation" describes conditions which, by nature or settled habit, arise in all working situations, without exception.

However, the presence of the word "generally" at the beginning of this phrase qualifies that meaning. As used in this context, "generally" means "in a reasonably inclusive

---

[7] The parties do not dispute whether claimant's conversion disorder has satisfied the conditions set forth in ORS 656.802(3)(a), (c), and (d), and we do not address those provisions.

manner : in disregard of specific instances and with regard to an overall picture." *Id.* at 945. The presence of the word "generally" at the beginning of the phrase may indicate a legislative intent to disregard specific instances and focus, rather, on the overall picture of what occurs in working situations. To do so, however, would alter the "without exception" meaning of the term "every."

Because "every" and "generally" as used in the text have somewhat conflicting meanings, and the context sheds no light on the legislature's intent in choosing this phrase, we turn to the legislative history of this provision.

ORS 656.802(3) was amended significantly by House Bill 2271 in 1987, adding the criterion regarding "conditions generally inherent in every working situation." Or Laws 1987, ch 713, § 4. As introduced, this provision indicated that "a mental disorder is not compensable under this chapter * * * unless the employment conditions producing the psychologic stress are extraordinary in nature." At a public hearing, it was suggested that the term "extraordinary" was too vague and, as a result, the House Committee on Labor amended the phrase to read: "Unless the employment conditions producing the mental disorder are conditions other than conditions inherent in every working situation." Public Hearing, House Committee on Labor, March 6, 1987, Tape 48, Side A; A-Engrossed House Bill 2271.[8] In response to

---

[8] The following discussion took place in public hearings in the House Committee on Labor:

HENRY DRUMMONDS: "Mr. Chairman, members of the committee, I am speaking on behalf of the Oregon Education Association in these remarks. In support [of], with certain modifications, the so-called House task force bill 2271. * * *

"The second proposed amendment is in the area specifically defining the types of mental stress that can be compensable. And we basically propose to support the task force bill in its entirety, with the proposed amendment that you see underscored there in section 2B. What we are proposing to do is to delete the phrase where it says 'unless the employment conditions producing the psychological stress are extraordinary in nature,' which is an exception that is written into this bill, we propose to change the phrase 'extraordinary in nature' to a phrase again taken directly word for word from the bill sponsored by Senator Hill and Representative Kotulski, 'conditions other than conditions which are generally inherent in every working situation.' * * *"

There was no explanation why the language proposed by Mr. Drummonds, "generally inherent in every working situation," was altered to leave out the word "generally" in the A-Engrossed version of the bill.

other concerns brought out at public hearings, that the "inherent in every working situation" language was too narrow, the Senate Committee on Labor added the qualifier of "generally" to the beginning of the phrase. Senator Hill said that this change was proposed, because the current language would make it difficult for employers to defend mental disorder claims; it would be impossible to demonstrate that a condition was inherent in absolutely *every* working situation. Senate Committee on Labor, April 23, 1987, Tape 120, Side A. *See also* Senate Committee on Labor, June 8, 1987, Exhibit A (Chairman Hill's proposed amendment); B-Engrossed House Bill 2271.

■     Although the legislative history reveals that the legislature considered how broad or narrow this exception should be, it does not reveal whether the legislature intended the specific type of condition at issue in this case to be excluded or included from "conditions generally inherent in every working situation." From the context and the legislative history of this provision, we are able to discern, though, that the legislature intended to curtail compensable claims for mental disorders based on on-the-job stressors. *See, e.g.*, Public Hearing, Senate Committee on Labor, April 23, 1987, Tape 120, Side A (comments by legislators that bill was intended to limit stress claims).[9]

---

[9] The following discussion took place in a public hearing in the Senate Committee on Labor:

"[REPRESENTATIVE SHIPRACK:] Sub b says that they've got to be conditions other than those conditions inherent in any, pardon me, in every working situation. So that means that they would have to be something that everyone would, everyone would agree are inherent to what you see everyday in the workplace.

"[SENATOR HANNON:] If I may stop you just for a moment, Representative. Could that same sort of standard be used for office worker versus say like a firefighter? Would the same basis, standard, apply in the workplaces?

"[REPRESENTATIVE SHIPRACK:] The intent there, Senator, is that in the workplace, you are expected to show up on time, you are to cooperate, perhaps, with your fellow employees, you are expected to have certain things unrelated to the specific occupations involved. This may also address itself to the fact that perhaps in every, in every experience you will have times of layoff. It does not — the intent of this is not to say a firefighter has a more stressful job than someone digging ditches, perhaps, although occasionally * * * be that way. We didn't want to get into that. That's not the intent of the House, to say that this profession is something, and this isn't. But there are certain duties in the workplace that are inherent to every job. And that's what we're trying to say there."

Based on this information, we turn to the question whether the Board's decision that claimant's mental disorder was the result of "conditions generally inherent in every working situation" appears to be within the legislative policy that inheres in the statutory term.

Human interactions are "conditions generally inherent in every working situation."[10] Although the amount and type of interaction with supervisors, coworkers, or customers may vary depending on the type of working situation, some interaction is inherent. Human interaction involves greeting.

■ Claimant has asserted that the customer's greeting of him, which is at issue in this case, can be seen as tortious, and that it would be against public policy to hold that such contact could be conditions generally inherent in every working situation. We reject the characterization of the conduct in question as tortious, because the agency's unchallenged findings and claimant's own statements show that the greeting was simply that — a greeting — which lacked any intent on the part of the customer to bring about harm. *See generally Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976) (battery requires actor to have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof). We also reject claimant's similar assertion that the conduct in question could have constituted a criminal assault, because claimant concedes that he did not suffer a physical injury. *See* ORS 163.160-.185 (assault requires "physical injury").

---

"[* * * * *

"[REPRESENTATIVE SHIPRACK:] We're not getting rid of stress disabilities in this bill, as some people may have said. We're not repealing stress disabilities. *What we are doing, we are certainly tightening it up*. I will grant you that. I think it, perhaps, in a few random cases, it has, there has been some problems. In the definitions, what you see in sub b is one thing that, I guess, is *probably the part of the definition that will do the most to clarify what the intent* of the house is." Public Hearing, Senate Committee on Labor, April 23, 1987, Tape 120, Side A (emphasis added).

[10] Insurers do not argue that claimant's claim is barred under the provision of ORS 656.802(1), which limits occupational disease claims to things "caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment." We express no opinion as to the applicability of this section to the present case.

■      We affirm the Board's characterization of this type of conduct by a person with whom one is expected to interact in the workplace, which does not result in a physical injury, as a condition that is "generally inherent in every working situation."[11] Thus, claimant's need for treatment of his mental disorder brought about by this greeting is not compensable under ORS 656.802.

The decision of the Court of Appeals is affirmed. The order of the Workers' Compensation Board is affirmed.

---

[11] We note, however, that if an overzealous greeting (such as a handshake that injures the fingers or a pat on the back that knocks over the recipient) results in a physical injury, the compensation claim would be for an "injury," ORS 656.005(7), rather than for an occupational disease, and would not be subject to the restrictions found in ORS 656.802(3)(b).