Argued and submitted April 7; resubmitted En Banc December 9, 1998, reversed
and remanded February 17, petition for review denied
July 6, 1999 (329 Or 61)

In the Matter of the Compensation of
Glenn E. Whitlock, Claimant.

Glenn E. WHITLOCK,
*Petitioner,*

*v.*

KLAMATH COUNTY SCHOOL DISTRICT,
*Respondent.*

(93-13776; CA A98297)

974 P2d 705

Sean Lyell argued the cause for petitioner. On the brief were Ralph E. Wiser, III, and Bennett, Hartman, Reynolds & Wiser.

Elliot C. Cummins argued the cause for respondent. With him on the brief was Cummins, Goodman, Fish & Platt.

Before Deits, Chief Judge, and Warren, Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim and Kistler, Judges.

HASELTON, J.

De Muniz, J., dissenting.

## HASELTON, J.

Claimant petitions for review of an order of the Workers' Compensation Board that determined that his mental disorder was not compensable because, *inter alia*, the work-related preparation that allegedly produced claimant's disorder was a "condition[ ] generally inherent in every working situation." ORS 656.802(3)(b).[1] We reverse and remand.

This case is before us for the second time. *Whitlock v. Klamath County School District*, 142 Or App 137, 920 P2d 175 (1996) *(Whitlock I)*. Claimant taught music to elementary school children in the Klamath County School District (District) from 1981 until 1993. At the end of the 1992-93 school year, in the wake of Ballot Measure 5,[2] the employer District eliminated all elementary school music teaching positions. Consequently, claimant exercised his "bumping" rights under a collective bargaining agreement and secured a secondary school social studies teaching position with the District. Although claimant had a secondary social studies certification, he had never actually taught that subject.

For the 1993-94 school year, the District assigned claimant either six or seven class periods a day, in four subject areas: 7th grade social studies, 10th grade global history, 12th grade economics, and 12th grade federal government. Claimant, like all teachers in the District, was allotted one 49-minute preparation period a day.

Claimant felt overwhelmed and stressed by his new duties. He worked 12 to 14 hours a day, including spending

---

[1] ORS 656.802 governs the compensability of "occupational diseases." Under certain circumstances, a "mental disorder" is a compensable "occupational disease." ORS 656.802(1)(a)(B). ORS 656.802(3) provides, in part:

"Notwithstanding any other provision of this chapter, a mental disorder is not compensable * * * unless the worker establishes all of the following:

"(a) The employment conditions producing the mental disorder exist in a real and objective sense.

"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer * * *."

[2] Ballot Measure 5 was adopted by the electorate in 1990 and incorporated into the Oregon Constitution at Article XI, section 11b-11f.

four to six hours a night preparing for the next day's classes. Nevertheless, he received "considerable" criticism from his students and some criticism from the school administration.[3] Claimant became very despondent and, at the urging of family and friends, sought treatment from his physician, who referred him for psychiatric treatment. The psychiatrist diagnosed "a single episode of nonpsychotic major depression due to stress at work."

In October 1993, claimant filed a claim for workers' compensation. Employer denied coverage. The administrative law judge set aside employer's denial and awarded claimant attorney fees. The Board, with one dissenting member, reversed, concluding that claimant had failed to prove a compensable mental disorder under ORS 656.802, because "the stressors that claimant cites are all conditions which are generally inherent in every working situation." In so holding, the Board focused on conditions that led to claimant assuming the social studies position *i.e.*, employer's budgetary constraints and claimant's exercise of "bumping" rights—as well as claimant's alleged lack of training.[4] The Board did not, however, meaningfully address the actual employment conditions—*i.e.*, "lack of preparation time" and the consequent requirements of extensive off-duty preparation—that claimant asserted produced his disorder.

On review in *Whitlock I*, we reversed and remanded. We agreed with claimant that "the Board's analysis of the conditions that led to claimant assuming the social studies position was extraneous," 142 Or App at 143, and that the Board's "preoccup[ation] with the prevalence of layoffs and the dynamics of bumping rights * * * may well have skewed [its] passing consideration of the preparation demands of the social studies position." *Id.* We further concluded:

---

[3] The parties stipulated that claimant's interaction with school administrators falls into the category of "reasonable disciplinary, corrective or job performance evaluation actions," ORS 656.802(3)(b), and is not the basis of his claim.

[4] With respect to claimant's alleged lack of training to teach social studies, the Board observed:

"Because of claimant's eleven years of experience as a teacher and his demonstrated 'proficiency' in social studies (sufficient to warrant certification in that subject area), we are not persuaded that, in claimant's case, there was such a lack of training."

"[T]he Board's discussion of the preparation demands associated with the social studies position was so cursory as to preclude meaningful judicial review * * *. [N]othing in the Board's extended analysis * * * suggests that the Board actually, specifically considered whether the preparation for the social studies position was of a sort 'generally inherent in every working situation.' Much less does the Board's decision explain why it could, or would, have reached such a conclusion." *Id.* at 143-44.[5]

On remand, the Board concluded that claimant's mental disorder was not compensable because his job preparation was a "condition generally inherent in every working situation":

"[T]he assumption of a new job ordinarily will result in extra work hours gaining experience and proficiency. Under certain circumstances, the extra work preparation time may be deemed excessive and, hence, not a condition common to all employments. Under the circumstances of this case, however, we find that claimant's extra preparation time was not excessive. Claimant was adequately trained for the teaching position because he had over 10 years of actual teaching experience and possessed a secondary social studies teaching certificate. Although his teaching experience was in music education at the elementary school level, we are persuaded that the teaching skills he gained at the elementary level were largely transferable to the secondary level. In addition, claimant's teaching certificate established that he had the minimum level of proficiency required to teach secondary social studies.

"Claimant's assumption of the new teaching position brought with it the expectation that he would devote extra preparation time to gain proficiency in the teaching position. This was particularly true given the fact that claimant had no practical teaching experience at the secondary level and his teaching experience was limited to music education. Both the subject matter and the older students were

---

[5] In *Whitlock I*, claimant did not specifically assign error to the "inadequate training" portion of the Board's order. In our discussion, we observed that the claimant had also asserted that "inadequate training" caused his stress but noted that "the Board concluded that, because of claimant's certification in social studies, there was no lack of training." 142 Or App at 141 n 3.

more demanding than what claimant had previously experienced as an elementary music teacher. *Under circumstances such as these, where a worker assumes a new position in the same occupation (e.g., teaching) and has met the minimum level of proficiency required to perform the tasks of the new position, we conclude that it is a condition common to all employments for the worker to devote extra time and efforts gaining proficiency in the position.*

"The number of hours that claimant spent preparing for his social studies classes (*i.e.*, 12 to 14 hours including four to six hours at home) was significant, particularly when compared to his preparation time as an elementary music teacher. Yet, when properly viewed in the context of commencing a new position, an event that commonly occurs in all employments, those number of hours do not appear to be unusual. Claimant was not directed by the employer to work or prepare for long hours. At the same time, though, he had begun the first term of his new teaching position and should reasonably have expected to devote extra hours during the first term gaining experience and proficiency; it was during this transition period that claimant first sought treatment for depression.

"*We find that claimant's extra hours of preparation was a condition 'generally inherent in every working situation' and, therefore, may not be considered a condition producing his mental disorder.*" (Emphasis added.) (Footnotes and citations omitted.)[6]

Claimant again seeks review, raising two assignments of error: (1) The Board erred in finding that claimant's job-related preparation was a condition "generally inherent in every working situation." ORS 656.802(3)(b). (2) The Board erred in finding that claimant did not lack training for his new position in a "real and objective sense." ORS 656.802(3)(a).

With respect to the first assignment of error, claimant asserts that preparation, much less substantial off-duty

---

[6] In a footnote, the Board reiterated its previous determination that,

"[b]ased on claimant's substantial teaching experience and secondary social studies teaching certificate, * * * [his] asserted lack of training for the secondary teaching position was not a condition that existed in a 'real and objective sense.'"

preparation, is not "generally inherent in every working situation"—and that, "[i]n fact, many occupations probably involve no off-duty preparation time at all."[7] Moreover, claimant contends, the amount of his off-duty preparation time "is a work condition found in extremely few jobs."

Employer counters that claimant's identification of the operative "condition" for purposes of the statutory analysis—"off-duty preparation time of four to six hours every day"—is impermissibly narrow and begs the question in that it frames the inquiry in terms of claimant's particular circumstances rather than general conditions of employment. That is, employer argues, the proper inquiry is not whether extra preparation of four to six hours a day is "a condition generally inherent in every working situation" (obviously, it is not),[8] but whether work preparation, in general, is such a condition. Employer further asserts that the Board's identification and definition of the operative "employment condition"—*i.e.*, how broadly or narrowly to characterize that condition—is a matter within the Board's particular expertise and "discretion" to which "deference" is owed.

Central to each party's position, and to our analysis, is *Fuls v. SAIF*, 321 Or 151, 894 P2d 1163 (1995), the only Supreme Court case construing and applying ORS 656.802(3)(b). In *Fuls*, the claimant was a service station attendant who suffered a conversion reaction after a customer gave him an unexpected bear hug. The Board determined that that condition was not compensable because "[v]irtually every working situation involves some degree of interaction with co-employees and/or the public" and that the bear hug that the claimant received was not "outside the range of behavior that occurs in every working situation." We

---

[7] Claimant lists as examples: secretaries, receptionists, pizza delivery persons, firefighters, sales representatives, assembly line workers, loggers, grocery clerks, "middle managers," waiters, cooks, field workers, and librarians.

[8] We reiterate our observation in *Whitlock I* that

"[e]mployer does not dispute that the conditions cited by claimant—*i.e.*, the need to prepare for four distinct classes and the lack of sufficient time for such preparation—exist in a real and objective sense." 142 Or App at 141 n 4.

Thus, we assume that claimant's off-duty preparation was necessary, as reasonably related to the requirements of his work.

affirmed that determination. *Fuls v. SAIF*, 129 Or App 255, 879 P2d 869 (1994).

On review, the Supreme Court also affirmed. In so holding, the court construed ORS 656.802(3), exploring the seeming tension between *"generally* inherent" and *"every* working situation." After concluding that " 'every' and 'generally' as used in the text have somewhat conflicting meanings, and the context sheds no light on the legislature's intent," 321 Or at 160, the court canvassed the legislative history:

"ORS 656.802(3) was amended significantly by House Bill 2271 in 1987, adding the criterion regarding 'conditions generally inherent in every working situation.' Or Laws 1987, ch 713, § 4. As introduced, this provision indicated that 'a mental disorder is not compensable under this chapter * * * unless the employment conditions producing the psychologic stress are extraordinary in nature.' At a public hearing, it was suggested that the term 'extraordinary' was too vague and, as a result, the House Committee on Labor amended the phrase to read: 'Unless the employment conditions producing the mental disorder are conditions other than conditions inherent in every working situation.' * * * In response to other concerns brought out at public hearings, that the 'inherent in every working situation' language was too narrow, the Senate Committee on Labor added the qualifier of 'generally' to the beginning of the phrase. Senator Hill said that this change was proposed, because the current language would make it difficult for employers to defend mental disorder claims; it would be impossible to demonstrate that a condition was inherent in absolutely *every* working situation." 321 Or 151 at 160-61 (emphasis in original) (citations omitted).

From that history, the court divined that the "legislature intended to curtail compensable claims for mental disorders based on on-the-job stressors." *Id.* at 161. Thus, a work-related mental disorder is not compensable if the stress-inducing condition is common to the general range of employments, even if that condition is not necessarily inherent in every job. *See Housing Authority of Portland v. Zimmerly*, 108 Or App 596, 599, 816 P2d 1179 (1991) ("The legislature intended to preclude claims for mental disorders

that arise from conditions that are common to all employments.").

The court then considered the specific merits of the Board's decision and, in so doing, announced the standard of judicial review: Was the Board's decision that the claimant's mental disorder was the result of "conditions generally inherent in every working situation" "within the legislative policy that inheres in [that] statutory term"? 321 Or at 162. The court concluded:

"Human interactions are 'conditions generally inherent in every working situation.' Although the amount and type of interaction with supervisors, coworkers, or customers may vary depending on the type of working situation, some interaction is inherent. Human interaction involves greeting.

"* * * * *

"We affirm the Board's characterization of this type of conduct by a person with whom one is expected to interact in the workplace, which does not result in a physical injury, as a condition that is 'generally inherent in every working situation.' " *Id.* at 162-63 (footnotes and citations omitted).

Here, employer argues that *Fuls* requires us to consider "the *general* nature" of the alleged stressor, and "not the *specific or unique* nature of the particular event" experienced by the claimant (preparation time of four to six hours every day). In employer's view, the Supreme Court in *Fuls* purposely placed the bear hug in the broadest possible category ("human interaction") so as to effectuate the legislature's intention to curtail compensable mental disorder claims. Conversely, claimant invokes *Fuls*, and the legislative history quoted in that opinion,[9] for the proposition that, even if

---

[9] In *Fuls*, 321 Or at 161-62 n 9, the court reproduced the follow colloquy:

"[REPRESENTATIVE SHIPRACK:] Sub b says that they've got to be conditions other than those conditions inherent in any, pardon me, in every working situation. So that means that they would have to be something that everyone would, everyone would agree are inherent to what you see everyday in the workplace.

"[SENATOR HANNON:] If I may stop you just for a moment, Representative. Could that same sort of standard be used for office worker versus say like a firefighter? Would the same basis, standard, apply in the workplaces?

"[REPRESENTATIVE SHIPRACK:] The intent there, Senator, is that in the workplace, you are expected to show up on time, you are to cooperate,

substantial off-duty preparation is required for teaching positions generically, such preparation is not a condition "generally inherent in every working situation":

> "The *Fuls* Court made clear that the phrase 'generally inherent in every working situation' refers to those conditions that all workers may experience in their jobs, such as human interactions, following the rules of the job, termination, etc. The legislature did not intend for the phrase to be job-specific. Thus, even if every person in a certain profession experiences a certain work condition, that does not mean that all persons in every working situation experience that work condition."

Each party is correct—to a point. Employer is correct that, because no two cases are identical, the operative "condition" cannot be defined solely and specifically by reference to a claimant's particular circumstances.[10] Claimant is correct that the statutory inquiry focuses not on the work conditions of teachers, or even professionals, generally, but on the complete range of employments.

---

perhaps, with your fellow employees, you are expected to have certain things unrelated to the specific occupations involved. This may also address itself to the fact that perhaps in every, in every experience you will have times of layoff. It does not—the intent of this is not to say a firefighter has a more stressful job than someone digging ditches, perhaps, although occasionally * * * be that way. We didn't want to get into that. That's not the intent of the House, to say that this profession is something, and this isn't. But there are certain duties in the workplace that are inherent to every job. And that's what we're trying to say there.

"* * * * *

"[REPRESENTATIVE SHIPRACK:] We're not getting rid of stress disabilities in this bill, as some people may have said. We're not repealing stress disabilities. *What we are doing, we are certainly tightening it up.* I will grant you that. I think it, perhaps, in a few random cases, it has, there has been some problems. In the definitions, what you see in sub b is one thing that, I guess, is probably the part of the definition that will do the most to clarify what the intent of the House is." Public Hearing, Senate Committee on Labor, April 23, 1987, Tape 120, Side A (emphasis added).

[10] Where, however, the stress-inducing employment conditions are tortious, or so extreme as to be beyond the range reasonably contemplated in employment, the resulting mental disorder is compensable even if conditions producing that disorder could be characterized, more generally, *e.g.*, as "human interaction." *See Fuls*, 321 Or at 162 (bear hug was not tortious because it was "a greeting * * * which lacked any intent on the part of the customer to bring about harm"). *Cf. Bank of Newport v. Wages*, 142 Or App 145, 919 P2d 1189 (1996) (affirming determination that the claimant's adjustment disorder, which was caused by supervisor's and coemployee's ridicule, taunting, and "joke" about claimant's obesity, was compensable).

■　　Nevertheless, the parties' arguments overshoot their mark. *Fuls* does not, as employer implies, purport to sanction, much less compel, characterizing the operative work condition in such broad terms as to preclude the compensability of work-related mental disorders. Indeed, in the abstract, if categories are drawn sufficiently broadly, virtually any stress-inducing employment condition could be characterized as a sub-species of a much broader condition common to all employments. Such an approach would not merely "curtail," but would preclude, compensability. Nor, as claimant suggests, did the Board frame its analysis in terms of the requirements of the particular employment—teaching, and teachers, only. Rather, the Board described the operative "condition" generally, as follows:

> "[W]here a worker assumes a new position in the same occupation * * * and has met the minimum level of proficiency required to perform the tasks of the new position, we conclude that it is a condition common to all employments for the worker to devote extra time and efforts gaining proficiency in the position."

We review that determination to determine whether it "appears to be within the legislative policy that inheres in the statutory term." *Fuls*, 321 Or at 162.[11] We conclude that it does not.

---

[11] Contrary to employer's assertion, that determination is not "within the range of discretion granted to the Board by the legislature," which must, consequently, "be given difference." Neither of the cases that employer cites, *Booth v. Tektronix, Inc.*, 312 Or 463, 823 P2d 402 (1991) or *SAIF v. Campbell*, 113 Or App 93, 830 P2d 616 (1992), supports that proposition. In *Booth*, the court merely addressed the standard for reviewing the Board's promulgation and interpretation of its own rules adopted pursuant to a "policy-delegating statute." 312 Or at 472-74, (quoting *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980)).

In *Campbell*, a pre-*Fuls* decision, we considered, and rejected, the employer's argument that the Board "erroneously supplied evidence by 'going outside the record' to determine what work conditions are generally inherent in every working situation." 113 Or App at 96. Although we did state that, "[u]nder the statute, the Board is authorized to develop the standard, that is, what 'conditions [are] generally inherent in every working situation,' either by formal rule making or on a case-by-case basis," 113 Or App at 96, we referred neither to deference nor to "discretion." We emphasize, moreover, that "employer has not argued that the Board's interpretation of the statute is inconsistent with the legislature's intent." *Id.* That argument, which corresponds to the standard of review announced in *Fuls*, is precisely the argument that claimant now makes.

■    The legislative intent underlying ORS 656.802(3)(b) is somewhat amorphous: Although the legislature intended to "curtail compensable claims for mental disorders based on on-the-job stressors," *Fuls*, 321 Or at 161, it intended to do so only if, or to the extent that, the stress-producing condition was common to the full range of employment. In this case, the Board's decision did not comport with that intent because "devot[ing] extra time and efforts gaining proficiency in [a new] position" is not common to the full range of working situations. Indeed, many jobs do not require "extra time and effort"—efforts beyond the on-the-job performance of the work itself—to attain proficiency. That is, most jobs do not require off-duty preparation, much less "extra hours of preparation time," to perform the work competently. For example, such common occupations as food preparation and serving, manual farm work, construction work, and manufacturing and fabricating work, generally do not involve "extra" preparation distinct from on-the-job performance.[12]

■■    The Board erred in determining that the off-duty preparation that claimant had to undertake to perform his job competently was a condition "generally inherent in every working situation." We reverse that determination. That does not, however, resolve whether claimant's mental disorder was compensable. Because the Board determined that claimant's off-duty preparation was "generally inherent in every working situation," it did not consider whether that employment condition was, in fact, the major contributing cause of claimant's mental disorder. *See* ORS 656.802(2)(a). We remand to the Board to determine that question in the first instance.

■    In his second assignment of error, claimant challenges the Board's conclusion that his alleged lack of training for his position did not exist in a "real and objective sense." ORS 656.802(3)(a). That question was, however, beyond the scope of our remand in *Whitlock I*:

"We * * * conclude that the Board failed to 'articulate * * * the rational connection between the facts and the legal

_____

[12] *See, e.g.; Occupational Projections and Training Status* (U.S. Dept. of Labor, Bureau of Labor Statistics, Bulletin 2451 39-42 (1994) (listing over 200 job categories in which "work-related or post-secondary school training is not significant")).

conclusion' that the preparation associated with claimant's social studies position was of a sort 'generally inherent in every working situation.' * * * Accordingly, we reverse and remand for the Board to address that question." 142 Or App at 144.

In so remanding, we rejected, albeit implicitly, claimant's "lack of training" arguments raised in *Whitlock I. See* 142 Or App at 141 n 3. Accordingly, we reject claimant's second assignment of error. *See Alexander v. U.S. Tank & Construction Co., Inc.,* 130 Or App 590, 593, 883 P2d 858 (1994) (declining to address conclusions of law challenged in second appeal that were beyond scope of remand after first appeal).

Reversed and remanded for consideration of whether claimant's preparation time was the major contributing cause of his mental disorder.

**DE MUNIZ, J.,** dissenting.

The majority concludes that the Board erred in its interpretation of the "condition[ ] generally inherent in every working situation" in ORS 656.802(3)(b). In so holding, the majority misconstrues the Board's order, which states:

"[T]he assumption of a new job ordinarily will result in extra work hours gaining experience and proficiency. Under certain circumstances, the extra work preparation time may be deemed excessive and, hence, not a condition common to all employments. * * *

"Claimant's assumption of the new teaching position brought with it the expectation that he would devote extra preparation time to gain proficiency in the teaching position. * * * Under circumstances such as these, *where a worker assumes a new position in the same occupation (e.g., teaching) and has met the minimum level of proficiency required to perform the tasks of the new position, we conclude that it is a condition common to all employments for the worker to devote extra time and efforts gaining proficiency in the position.*

"[W]hen properly viewed in the context of commencing a new position, an event that commonly occurs in all employments, those number of hours [spent by claimant] do not appear to be unusual." (Emphasis added.)

Based on the emphasized language, the majority concludes that the Board determined the inherent condition to be devoting extra time and effort to gain proficiency in a new position. 158 Or App at 474. However, when all of the order is considered, the common condition identified by the Board is not extra time and effort but, rather, the "learning curve" present in any new employment with the attendant expectation that a worker will do the preparation needed to perform the job.

The majority does not recognize a learning curve as a condition common to any new employment. Instead, it focuses solely on off-duty efforts needed to gain proficiency. The majority points to a laundry list of jobs found in the newspaper classifieds, which, it says, do not require off-duty efforts to become proficient and, therefore, shows that such efforts cannot be common to all employments.[1]

I do not dispute that many jobs require little or no off-duty time or effort to do them competently. But the majority's focus misses the common condition recognized by the Board. A dishwasher may not have to spend off-duty time and effort to become competent at a new dishwashing job. However, that does not mean that there is no learning curve in that new job. A learning curve exists even if it might be limited to learning the physical layout, the routine of the staff, or employer expectations for the job.

I do not conclude, as does the majority, that the Board's order states that every new job requires off-duty time and effort. Rather, it shows the Board's understanding that, depending on the nature of the job and the qualifications brought to it, a worker may—or may not—be required to spend off-duty time and effort to become proficient at a new job. Articulated in terms addressing claimant's circumstances, the Board recognized that where, as here, claimant's

---

[1] Even assuming that the majority is correct that lifeguards, delivery drivers, painters, or shipping handlers do not spend off-duty time in job preparation, the majority does not explain why it picks those occupations as opposed to teachers, accountants, stock brokers, lawyers, computer programmers or, for that matter, judges, whose professions do demand off-duty efforts to gain proficiency.

prior teaching experience in elementary school music education gives him only "minimal proficiency" for the new position, the "learning curve" of teaching social studies at the secondary level will require off-duty time and effort in order to gain proficiency.[2]

The majority recognizes that "a work-related mental disorder is not compensable if the stress-inducing condition is common to the general range of employments, even if that condition is not necessarily inherent in every job." 158 Or App at 471. Despite that recognition, the majority's approach demands that the condition be present in every job and focuses the dispute exactly where the legislature did not want it. Legislative history cited by the Supreme Court in *Fuls v. SAIF*, 321 Or 151, 160-61, 894 P2d 1163 (1995), shows that the qualifier "generally" in ORS 656.802(3)(b) was added precisely because the legislature recognized the impossibility of demonstrating that a condition would be inherent in absolutely every working situation.

Our role on review is to decide whether the Board's determination "appears to be within the legislative policy that inheres in the statutory term." *Fuls*, 321 Or at 162. The Board's identification of the presence of a learning curve in new employment is a condition common to the general range of employments. The Board's interpretation is, thus, within the legislative policy of a condition "generally inherent in every working situation," ORS 656.802(3)(b), and the majority errs in holding otherwise.

I dissent.

Warren, Edmonds and Linder, JJ., join in this dissent.

---

[2] The Board clearly understood that there are situations when the required proficiency of a new position goes beyond constituting a "learning curve" and will result in excessive preparation. In claimant's instance, however, the Board rejected that that was the case. Claimant's second assignment of error essentially challenges that finding, but I agree with the majority that that issue was beyond the scope of remand.