Argued and submitted August 27, 1998, affirmed January 13, petition for review denied July 6, 1999 (329 Or 61)

DALE WOOD,
*Appellant,*

*v.*

G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

(CV96-0332; CA A96576)

972 P2d 1221

Harrison Latto argued the cause and filed the brief for appellant.

Judy Carol Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

HASELTON, J.

## HASELTON, J.

Petitioner appeals from a judgment denying post-conviction relief. ORS 138.640. Although he raises other arguments, which we reject without elaboration, his principal contention is that his criminal defense attorney's failure to introduce "exculpatory" written statements by his alleged coperpetrators constituted inadequate assistance of counsel. Petitioner asserts, particularly, that those hearsay statements would have been admissible as statements against penal interest. OEC 804(3)(c). We disagree and consequently affirm.

Petitioner was convicted in the underlying criminal proceeding of robbery in the first degree, three counts of burglary in the first degree, and six counts of theft in the first degree, all arising out of an incident in Odell, Oregon, on October 17, 1994. The indictment, which issued on October 21, 1994, alleged that petitioner had acted together with Jason Fetters and two brothers, Jacob and Joshua Smith. On October 28, 1994, after petitioner and the Smith brothers had been arrested and while they were jointly incarcerated,[1] Jacob Smith drafted and signed a handwritten note, which stated:

> "I Jack Wayne Smith admit that Jason Fetters & Dale Wood [petitioner] had nothing to do with what happened in Odell, there [*sic*] not big enough to twist my arms.
>
> "It was a Family Problem."

On October 29, Joshua Smith drafted and signed a similar statement:

> "I Josh Seferino Smith admit that Dale Wood and Jason Fetters didn't have any connection or knowledge of the incident that occurred in Odell."

Petitioner allegedly[2] provided those statements to his defense attorney.

---

[1] Fetters was ultimately tried separately, and the disposition of his trial is immaterial to this appeal.

[2] Petitioner testified that he provided the statements to his criminal defense attorney. That attorney submitted an affidavit in the post-conviction proceeding, but that affidavit does not refer to the Smith brothers' statements. The post-conviction court made no findings as to whether petitioner did, in fact, provide the statements to his attorney.

Jacob Smith subsequently pleaded guilty. In January 1995, petitioner and Joshua Smith were tried jointly. When petitioner asked his attorney about using the Smiths' statements, the attorney allegedly[3] told petitioner that there was "no way that [he] could present those statements." At trial, petitioner unsuccessfully presented an alibi defense— that he was in The Dalles, 40 miles from Odell, at the time of the incident.[4] The jury convicted both petitioner and Joshua Smith.

In seeking post-conviction relief, petitioner contended, *inter alia*, that his defense attorney should have either (1) called the Smith brothers as witnesses to elicit oral testimony approximating their written statements; or (2) if the Smiths were unavailable, introduced the written statements as admissions against penal interest pursuant to OEC 804(3)(c). At the post-conviction trial, petitioner presented testimony from Joshua Smith that, although he had not testified on his own behalf at the criminal trial, because his attorney had advised him not to, if petitioner's defense lawyer had called him, he would have testified that petitioner did not participate in the crime.[5]

The post-conviction court rendered the following pertinent finding:

> "Joshua Smith, one of petitioner's co-defendants, was tried jointly with petitioner and did not testify in his own behalf, on the advice of his attorney. Petitioner has presented no credible evidence that Jacob Smith, another co-defendant, was available to testify."

Implicit in that finding, and in the court's ultimate rejection of post-conviction relief, is a determination that, Joshua Smith's testimony notwithstanding, Joshua would not, in fact, have testified at the criminal trial. *See Ball v. Gladden*,

---

[3] *See* n 2.

[4] Petitioner's alibi was based on the testimony of his fiance, Lisa Pasch. The state impeached Pasch with her prior convictions for forgery, burglary and theft. The state also established that petitioner had written Pasch a letter from jail in which he described in great detail their alleged activities on October 17, 1994, and instructed Pasch to "read this over and over, it will save me."

[5] Petitioner also submitted an earlier affidavit of Joshua Smith averring that petitioner was not involved in the crime.

250 Or 485, 487, 443 P2d 621 (1968). The court also rejected petitioner's contention that the Smiths' written statements were admissible under OEC 804(3)(c):

"Although Joshua and Jacob Smith, two of petitioner's co-defendants, had made written statements in which they exonerated petitioner, their statements do not incriminate themselves and would not have been admissible in petitioner's trial as declarations against penal interest."

On appeal, petitioner reiterates his arguments that the Smiths' written statements were admissible under OEC 804(3)(c) and that failure to offer those statements constituted inadequate assistance of counsel. OEC 804(3) provides, in part:

"The following are not excluded by ORS 40.455 if the declarant is unavailable as a witness:

"* * * * *

"(c)   A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Thus, to establish the admissibility of exculpatory hearsay statements under that exception, the proponent must establish three elements:

"(1)   The declarant must be 'unavailable' to testify as defined under OEC 804(1); (2) the statements must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statements unless he or she believed them to be true (the penal interest requirement); and (3) there must be corroborating circumstances that clearly indicate the trustworthiness of the statements." *State v. Schutte*, 146 Or App 97, 101, 932 P2d 77 (1997).

The state contends that the Smiths' statements were so indefinite, without explicit reference to criminal activity,

that they did not "so far [tend] to subject the declarant to civil or criminal liability * * * that a reasonable person would not have made the statement unless the person believed it to be true." *See Schutte*, 146 Or App at 102-03 ("[A] qualifying statement need not be a confession to a crime" but must "*tend*" to subject the declarant to criminal liability.) (emphasis in original). In all events, the state asserts, petitioner's proof of corroboration was insufficient.

■ We agree with the state that the Smiths' written statements were not admissible under OEC 804(3)(c). Even assuming that the Smiths were unavailable, Joshua Smith's statement merely said that petitioner "didn't have any connection or knowledge of the incident that occurred in Odell." There is nothing in that statement that "could remotely 'tend' to subject [Joshua] to criminal liability." *Schutte*, 146 Or App at 102. Although it is true, as petitioner asserts, that one might infer from the statement that Joshua was present at the crime scene in Odell, the statement is also, and at least equally, subject to myriad other reasonable inferences — including that someone else, perhaps even petitioner himself, had told Joshua that petitioner had no involvement. In addition, even an inference that Joshua was present at Odell would not, by itself, demonstrate that he had actually participated in the crime. Even under the "tendency" standard, the stacking of inferences that petitioner urges is too speculative to permit its admission under OEC 804(3)(c).

■ The analysis of Jacob Smith's statement is a bit more complicated because it includes additional, arguably inculpatory, language. Not only did Jacob state that petitioner had "nothing to do with what happened in Odell," but he further stated that "[petitioner and Fetters are] not big enough to twist my arm. It was a Family Problem." The latter comments at least arguably strengthen an inference that Jacob was personally involved in the crime.

The difficulty, however, is that, even if one assumes that *those* remarks incriminated Jacob, the reference to petitioner having "nothing to do with what happened" did not. That is, even viewed most favorably to petitioner, Jacob's statement was the functional equivalent of saying, "I did it, but he did not." The first element is self-incriminatory and,

hence, admissible. But the second element—the element that is critical to petitioner's present argument—is not.

We emphasize that this is not a case like *Schutte* or *State v. Thoma*, 313 Or 268, 834 P2d 1020 (1992), where the declarant's self-incriminating statements necessarily exculpated the defendant who sought to introduce those statements. In *Schutte*, a DUII case, either the defendant was driving or the declarant was; both could not have been driving at the same time. Similarly, in *Thoma*, if the declarant did, in fact, commit the murder, the defendant could not have; the two were mutually exclusive. Here, in contrast, the Smiths and petitioner were charged with committing the crime *jointly*; *both* could have committed the crime. Thus, Jacob's arguably self-incriminating statements did not exculpate petitioner, and, conversely, his exculpatory references to petitioner were not self-incriminating.

In all events, even if Jacob's statements could somehow be characterized as "a statement tending to expose the declarant to criminal liability and offered to exculpate the accused," OEC 804(3)(c), it would have been inadmissible because of a lack of corroboration. No reported Oregon decision comprehensively explores the meaning of "corroboration" for purposes of OEC 804(3)(c). We need not, and do not purport to, do so here. Whatever the precise contours of that requirement, petitioner's proof fell far short of even a minimally sufficient showing.

The purpose of the corroboration requirement is to ensure a heightened degree of reliability for statements that otherwise might well be deemed unreliable:

> "The common law refused to concede the adequacy of penal interest in large part because it distrusted evidence of confession by third persons offered to exculpate the accused. This reflected a suspicion that either the facts or the contents of the confession were fabricated, enhanced in either case by the required unavailability of the declarant." Legislative Commentary to OEC 804(3)(c).

Decisions applying the analogous federal rule, FRE 804(b)(3), express the same concerns. *See* Jack B. Weinstein & Margaret A. Berger, 5 *Weinstein's Federal Evidence*, § 804.06 (Joseph M. McLaughlin, ed., 2d ed 1998).

Here, the only corroboration of Jacob's statement that petitioner identifies, even implicitly, is Joshua's statement. On this record, we reject the proposition that one of the alleged coperpetrator's conclusory and uncorroborated statement is sufficient to corroborate one of the other coperpetrator's similar statement. Such "cross-corroboration" under these circumstances does nothing to allay the "suspicion" underlying the corroboration requirement, *viz.*, that coperpetrators faced with likely conviction have nothing to lose by lying, in unsworn statements, about a cohort's involvement.[6]

The Smith brothers' statements were not admissible under OEC 804(3)(c). Accordingly, defense counsel's failure to offer those statements did not constitute inadequate assistance of counsel.

Affirmed.

---

[6] The only corroboration of Joshua's statement that petitioner identifies is that Joshua twice confessed to his involvement in the crimes. Those confessions simply corroborated the Smiths' guilt, not petitioner's innocence. We note, moreover, that both of those confessions occurred *before* the Smiths wrote the statements purporting to exonerate petitioner.