Argued and submitted July 1, reversed and remanded December 22, 1999

In the Matter of the Compensation of
Vicki I. Havlik, Claimant.

Vicki I. HAVLIK,
*Petitioner,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(98-00608; CA A105086)

992 P2d 942

R. Adian Martin argued the cause and filed the brief for petitioner.

Jenny Morf argued the cause for respondent. On the brief were Jacqueline A. Weber and Thomas Sponsler.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Edmonds, P. J., dissenting.

**KISTLER, J.**

Claimant petitions for review of an order of the Workers' Compensation Board denying her stress claim. The Board concluded that claimant failed to establish that cognizable stressors were the major cause of her depression because her depression was caused, in part, by conditions "generally inherent in every working situation." ORS 656.802(3)(b). We reverse and remand.

Claimant began working as an animal control officer at Multnomah County's Animal Control Center in 1994. On October 16, 1997, she received a mental health evaluation and was diagnosed with major depression. The day after the mental health evaluation, she filed a workers' compensation claim for stress. Claimant identified several events, and management's response to those events, as the cause of her condition. Those events include two incidents where claimant was bitten by dogs, a television interview that went badly, and several incidents where management used disparaging language to refer to the persons who worked with the animals in the shelter. Claimant also asserts that she experienced stress due to the overcrowded and substandard conditions in which the animals at the shelter were kept.

Employer denied claimant's stress claim, and the administrative law judge (ALJ) affirmed employer's denial. The ALJ reasoned that because the stress caused by the dog bites, the television interview,[1] and the disparaging language were not generally inherent in every working situation, those work conditions could be considered in determining the major cause of claimant's depression. However, the ALJ concluded that the stress caused by the overcrowded and substandard conditions in which the animals in the shelter were kept was caused by a policy change and that policy changes are generally inherent in every working situation. Because that source of claimant's stress could not be considered in determining the cause of her depression, the ALJ found that

---

[1] The ALJ stated that he would not "give any 'value' to the level of stress stemming from whatever discipline claimant thought she was going to receive as a result of her performance during the television interview." However, the ALJ stated the stress from participating in the interview was a "bona fide stressor."

claimant had not met her burden of proving that her work was the major contributing cause of her condition as required by ORS 656.802(2)(a).[2]

The Workers' Compensation Board affirmed. It reasoned:

"Claimant also contends that the ALJ erred in characterizing some of claimant's stressors as excluded from among compensable stressors because they were 'conditions other than conditions generally inherent in every working situation.' *See* ORS 656.802(3)(b). In addition, claimant argues that she was not stressed by the employer's recent policy changes, only by the *effects* of those changes. We disagree with both arguments.

"Claimant reported stress in part due to 'continuing problems dealing with management.' She believed that the employer's new management decisionmakers knew nothing about animal control. Claimant specifically disagreed with new management policies that put an end to quick euthanasia and caused the shelter to be overcrowded. In claimant's view, management's mistaken prioritizing caused numerous stressors, including unexpected schedule changes, understaffing, and inadequate care for overcrowded shelter animals.

"But there is uncontradicted evidence that management's scheduling and staffing changes were direct responses to budgetary constraints and the overcrowded conditions resulted largely from reliance on legal advice (regarding the proper holding time for feral cats). These stressors are not compensable because they are conditions 'generally inherent in every working situation.' *See* ORS 656.802(3)(b). *See Patrick W. Real,* 49 Van Natta 2107

---

[2] ORS 656.802(2)(a) provides that "[t]he worker must prove that employment conditions were the major contributing cause of the disease." The ALJ reasoned that, when a physician has said that several combined causes constitute a major cause of the mental condition, the doctor's conclusion of major cause becomes invalid if any one of those causes is eliminated, unless the doctor has quantified the specific proportion of causation that resulted from the eliminated factor as compared to the causation attributable to the remaining causes. In this case, claimant's doctor did not quantify the specific proportion of causation attributable to each of the factors claimant claims combined to cause her mental condition. Instead, the doctor's assessment stated only that all of the work factors combined constituted the major contributing cause of the stress.

(1997), *aff'd mem* 157 Or App 723[, 972 P2d 1231] (December 16, 1998) (Employer's new management methods are conditions generally inherent in all working situations); *Gary W. Helzer*, 47 Van Natta 143, 144 (1995) (New management and administrative procedures are generally inherent in every working situation); *Karen M. Colerick*, 46 Van Natta 930 (1995) (Changes in procedures and altered job descriptions are conditions generally encountered in all working situations)." (Footnote and citations to record omitted.)

The Board accordingly concluded that claimant had failed to establish "that cognizable stressors were the major cause of her mental condition."

■ On appeal, claimant argues that the Board erred in stating that she was stressed by policy changes and also in finding that policy changes that resulted in overcrowded conditions for animals at the shelter were generally inherent in every working situation.[3] Claimant argues that she was not stressed by policy changes but rather from the overcrowded conditions in which the animals were kept as a result of the policy changes. Claimant reasons that "[t]he shelter was not meeting the requirements of the ordinances she was charged with enforcing. Because animals sleeping in excrement and being without food and water flows from a policy, it does not follow that such egregious wrongs are generally inherent in every working situation." Employer responds that changes in policy to comply with the law are conditions common to all occupations, even if the results of those changes are disruptive and disturbing.

■ ORS 656.802(3)(b) provides that a mental disorder is not a compensable condition unless "[t]he employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation * * *." We review the Board's determination that policy

---

[3] Claimant also raises a second assignment of error arguing that the Board erred in concluding that her claim must fail because the medical evidence did not exclude noncognizable stressors. Claimant argues that because employer did not raise medical causation in its denial or at the hearing before the close of the record, employer effectively waived that issue. Because we reverse and remand based on claimant's first assignment of error, we do not reach her second assignment of error.

changes that resulted in overcrowded conditions for animals at the shelter were generally inherent in every working situation "to determine whether it 'appears to be within the legislative policy that inheres in the statutory term.'" *Whitlock v. Klamath Cty. School District*, 158 Or App 464, 474, 974 P2d 705, *rev den* 329 Or 61 (1999) (quoting *Fuls v. SAIF*, 321 Or 151, 162, 894 P2d 1163 (1995)). In *Fuls*, the court reviewed the legislative history of the statute and concluded that the legislative policy that inheres in the statutory term is to "curtail compensable claims for mental disorders based on on-the-job stressors." 321 Or at 161. However, the policy is intended only to curtail such claims "if, or to the extent that, the stress-producing condition was common to the full range of employment." *Whitlock*, 158 Or App at 475.

Whether a stress-producing condition is common to the full range of employment depends, in large part, on how that stress-producer is defined. As a general rule, "because no two cases are identical, the operative 'condition' cannot be defined solely and specifically by reference to the claimant's particular circumstances." *Whitlock*, 158 Or App at 473. As *Whitlock* also explained, however, "if categories are drawn sufficiently broadly, virtually any stress-inducing employment condition could be characterized as a sub-species of a much broader condition common to all employments. Such an approach would not merely 'curtail,' but would preclude, compensability." *Id.* at 474.

The Board issued its order in this case before we issued our decision in *Whitlock*. The Board did not have the benefit of *Whitlock*'s reasoning and did, we believe, precisely what *Whitlock* cautioned against. The Board viewed claimant's reaction to her working conditions as simply a reaction to "policy changes." Virtually all working conditions, however, can be traced back to a policy change. If the category is drawn that broadly, then it would effectively preclude compensability even though the conditions that are directly responsible for the worker's stress are not generally inherent in every working situation. There was evidence in the record, which the Board appeared to accept, that the inadequate and perhaps unlawful conditions in which the animals were being kept was one cause of plaintiff's stress. In viewing that cause as a policy change, the Board pitched its analysis at too high

a level of generality and thus failed to undertake the inquiry that *Whitlock* requires.

As we recognized in our first opinion in *Whitlock*, the relevant question is whether the working conditions that are directly responsible for a claimant's mental disorder are generally inherent in every working situation. *See Whitlock v. Klamath County School District*, 142 Or App 137, 142, 920 P2d 175 (1996) (quoting employer's concession with approval). Our later decision in *Whitlock*, of course, also teaches that the stress-producing condition cannot be described so narrowly that every stress-producing condition becomes compensable. *See* 158 Or App at 473. The task of identifying the conditions that are directly responsible for the worker's stress is not always an easy one, but the legislature has entrusted that task in the first instance to the Board. *See* ORS 183.482(7). We accordingly reverse the Board's order and remand for reconsideration in light of our recent decision in *Whitlock*.

Reversed and remanded.

**EDMONDS, P. J.,** dissenting.

In this workers' compensation case involving ORS 656.802(3)(b) and a worker at the Multnomah County Animal Control Center, the majority holds that "[t]he Board did not have the benefit of [our reasoning in *Whitlock v. Klamath Cty. School District*, 158 Or App 464, 974 P2d 705, *rev den* 329 Or 61 (1999),] and did, we believe, precisely what *Whitlock* cautioned against." 164 Or App at 527. Because I believe the Board's ruling is consistent with *Whitlock* and the Supreme Court's holding in *Fuls v. SAIF,* 321 Or 151, 894 P2d 1163 (1995), on which *Whitlock* is based, I dissent.

ORS 656.802(3)(b) provides that a mental disorder is not compensable under ORS chapter 656 unless the worker establishes that:

"[t]he employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the

employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles."

In ruling on claimant's claim, the Board said,

"Claimant also contends that the [administrative law judge] erred in characterizing some of claimant's stressors as excluded from among compensable stressors because they were 'conditions other than conditions generally inherent in every working situation.' *See* ORS 656.802(3)(b). In addition, claimant argues that she was not stressed by the employer's recent policy changes, only by the *effects* of those changes. We disagree with both arguments.

"Claimant reported stress in part due to 'continuing problems dealing with management.' She believed that the employer's new management decisionmakers knew nothing about animal control. Claimant specifically disagreed with new management policies that put an end to quick euthanasia and caused the shelter to be overcrowded. In claimant's view, management's mistaken prioritizing caused numerous stressors, including unexpected schedule changes, understaffing, and inadequate care for overcrowded shelter animals.

"But there is uncontradicted evidence that management's scheduling and staffing changes were direct responses to budgetary constraints and the overcrowded conditions resulted largely from reliance on legal advice (regarding the proper holding time for feral cats). These stressors are not compensable because they are conditions 'generally inherent in every working situation.' *See* ORS 656.802(3)(b)." (Footnote omitted; citations omitted.)

In *Fuls*, the claimant suffered from a conversion disorder that resulted from a customer, with whom the claimant was acquainted, walking up behind the claimant and greeting him with a "bear hug." After interpreting the intent of the legislature in promulgating ORS 656.802(3)(b), the court held that the disorder was not compensable because greetings as human interactions are conditions inherent in every working situation. In arriving at its decision in this case, the Board expressly acknowledged *Fuls*.

In *Whitlock*, the claimant was an elementary school music teacher who was reassigned to a secondary school

social studies teaching position after the employer school district eliminated his position because of budget constraints. He felt overwhelmed by his new duties. The claimant worked 12 to 14 hours each day, including four to six hours each night preparing for the next day's classes. As a consequence, he was diagnosed with " 'a single episode of nonpsychotic major depression due to stress at work.' " *Whitlock*, 158 Or App at 467. We remanded for consideration of whether the off-duty preparation time was the major contributing cause of the claimant's mental disorder, after ruling that the Board erred in determining that preparation time is a condition "generally inherent in every working situation." We noted that, "because no two cases are identical, the operative 'condition' cannot be defined solely and specifically by reference to a claimant's particular circumstances" and that "the statutory inquiry focuses not on the work conditions of teachers, or even professionals, generally, but on the complete range of employments." *Id.* at 473.

According to the majority, the Board, without the benefit of *Whitlock*, attributed claimant's stress in this case as a reaction to "policy changes." The majority reasons that the Board erred because compensability based on policies would be precluded in every case, inasmuch as virtually all working conditions can be traced back to a work-related policy.[1] I understand the Board's decision differently. The first and second paragraphs of the Board's opinion quoted above refer to "policy changes" in the context of claimant's argument. The second paragraph concludes with a description of stressors identified by claimant that resulted from the policy changes. Specifically, the stressors included "unexpected schedule changes, understaffing, and inadequate care for overcrowded shelter animals." The third paragraph reflects the Board's reasoning about how the stressors asserted by claimant engage with the language of ORS 656.802(3)(b). In

---

[1] ORS 656.802(3)(b) focuses on "employment conditions" that produce mental disorders. It excludes from compensable mental disorders those disorders that are produced by conditions that have as their source "employment decisions attendant upon ordinary business or financial cycles." In light of the language of the statute, it is not peculiar that the Board would point out in its recitation of claimant's argument that the source of the conditions at issue were budgetary constraints and legal advice, sources that are attendant to the ordinary conduct of business and financial cycles.

other words, the Board made the same kind of factual inquiry in this case that the Supreme Court made in *Fuls* and we made in *Whitlock*.

Nothing in *Whitlock* provides a revelation about the meaning of the statute. We simply relied on the Supreme Court's interpretation in *Fuls*. Nothing we said in *Whitlock* is determinative of the outcome of this case because each case must be evaluated on its own facts. Moreover, claimant's particular work circumstances, *i.e.,* working at an animal shelter, do not define the inquiry. Rather, the proper inquiry is whether the legislature would have contemplated that the particular stressors relied on by claimant are conditions that are generally inherent in the complete range of employments. Scheduling and staff changes and the adequacy of the employer's physical facility to handle the workload are the kinds of conditions that are generally inherent in the complete range of employments. It is evident that the Board asked the correct question and arrived at the correct answer. Consequently, there is no reason for remand, and I would affirm.