Argued and submitted September 14, 1999, reversed and remanded for
reconsideration August 30, 2000

In the Matter of the Compensation of
Susan M. Shotthafer, Claimant.

LIBERTY NORTHWEST INSURANCE
CORPORATION
and Brookings Harbor High School,
*Petitioners,*

*v.*

Susan M. SHOTTHAFER,
*Respondent.*

(98-01697; CA A105289)

10 P3d 299

David O. Wilson, Senior Trial Counsel, argued the cause and filed the brief for petitioners.

Scott M. McNutt, Jr., argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Liberty Northwest Insurance Corporation (Liberty Northwest) and its insured, Brookings Harbor High School, petition for review of an order of the Workers' Compensation Board that determined that claimant's mental disorder was compensable. We review for errors of law and for substantial evidence. ORS 183.482(8). Because the Board erroneously held that a letter to claimant from her supervisor was not a "disciplinary, corrective or job performance evaluation action," ORS 656.802(3)(b),[1] we reverse and remand for reconsideration.

We summarize the facts from the Board's order and from the record. Claimant began working as a high school teacher in September 1996. Claimant's position was probationary for the first three years, which meant that she was subject to a more rigorous evaluation process, and her contract could be terminated more easily than that of a permanent teacher. Claimant's initial teaching load included two Spanish courses and a film literature course. She was assigned to a "portable" classroom that was not part of the main school building. The principal, Darold Powell, instructed claimant to impose discipline in her classroom because the students generally considered the portable as a place "to party." Claimant attempted to impose a disciplinary approach consistent with the principal's direction.

Claimant's first semester of teaching was uneventful with a few notable exceptions. On one occasion, she was "booed" by students when she was introduced at a school assembly. On other occasions students "egged" the outside of her portable, left a rotten egg inside her classroom, and let the air out of the tires of her car while it was parked in the school lot.

---

[1] ORS 656.802(3)(b) provides that a mental disorder is not compensable unless:

"The employment conditions producing the mental disorder are conditions *other than* conditions generally inherent in every working situation or *reasonable disciplinary, corrective or job performance evaluation actions by the employer*, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles." (Emphasis added.)

In January 1997, Powell wrote a letter to claimant expressing his concern that enrollment in both of her Spanish classes had declined dramatically. In that letter, he noted that Spanish was an elective course and that, if student enrollment continued to decline, the Spanish program and her position may lose funding. The letter asked claimant to give "serious thought" to making the "classes more attractive to students" and encouraged claimant "to consider grades and praise more in line with what [the students] are used to receiving."

In March 1997, claimant received her first performance evaluation. Although it noted some areas that needed improvement, Powell recommended that claimant's employment be continued for the following school year. Shortly thereafter, claimant received a letter from the superintendent, Dr. Paul Prevenas, notifying claimant of the opportunity to renew her probationary teacher contract for the 1997-98 school year. Claimant accepted the contract renewal offer.

In June 1997, claimant gave final exams in her Spanish classes. Many students did not do well and several expressed concerns about their grades. The day after grading the first set of exams, while claimant was giving another exam, the mother of one of claimant's students confronted claimant in her classroom concerning the daughter's exam. Because other students were taking an exam, claimant asked the mother to return at a more convenient time. The mother returned the next day, became very angry with claimant, and wrote a letter to the principal complaining about claimant. On the last day of school, a second parent interrupted claimant's class, expressed anger about grades and threatened claimant. On neither occasion did the parent possess the required pass to enter claimant's classroom. After those two incidents, claimant wrote a lengthy letter to Powell explaining her meetings with the parents and the grades. Claimant ultimately raised several students' final grades for various reasons.

That summer, Powell wrote to claimant telling her that he had received a letter, several phone calls, and personal visits from parents complaining about her Spanish

classes. Among other things, Powell's letter explained (1) his concerns about the strong feelings parents expressed about her teaching abilities; (2) his opinion that it would be very difficult for claimant to overcome the "reputation" she had established in the student body and the community; (3) that he would recommend to Superintendent Prevenas and the Board of Education that her salary step increment for the following year be withheld; and (4) that he would meet with claimant to establish a "plan of assistance." Prevenas subsequently sent claimant a letter providing claimant an opportunity to respond to Powell's recommendation. The day after receiving the superintendent's letter, claimant sought treatment for gastritis and acute situational anxiety. Claimant later responded to Powell's recommendation and to other matters.

In August 1997, several more events occurred. First, the county sheriff responded to a call from claimant's husband concerning suspicious activities by a group of teenagers that had occurred near claimant's house. Second, yet another parent of a Spanish class student wrote to Powell to complain about her daughter's final grade, to complain about an incident involving claimant and the parent that occurred earlier that year, and to request that the principal consider removing claimant from the school system. Powell informed claimant of that letter and claimant responded. Third, Prevenas informed claimant that, because her performance evaluation was not "substandard," the school district could not withhold her salary increment. However, because of "several alleged actions" after that evaluation, the school district had legitimate questions as to the quality of her teaching. Therefore, Prevenas told claimant, he had directed Powell to commence an evaluation process "immediately upon the start of the upcoming 1997-98 school year," and that the school district "reserved" the option to withhold claimant's salary increment for the remaining portion of the school year. Fourth, claimant continued her treatment for anxiety and depression.

After the school year began, a parent of one of claimant's Spanish students wrote to Powell expressing concern about a textbook shortage and potential copyright infringement problems for materials claimant had copied for her students. The parent also complained about claimant's teaching.

In fact, ordering textbooks was not claimant's responsibility, and she had followed administrative instructions to make the copies. Claimant was not given the letter, nor was she given an opportunity to meet with that parent. Rather, claimant was given an opportunity to meet with Powell to "discuss the issues" raised by the parent.

In October 1997, Powell notified claimant that he had met and spoken with several parents of her Spanish class students who had expressed concerns about her teaching. He also informed her that a group of "probably 12 to 15" parents were unhappy about her class and were planning to come in as a group and confront claimant in her class. He instructed claimant to tell the parents to go to the administrative office if they appeared at her classroom. Later, Powell wrote claimant a memorandum explaining that several students had come to him and outlining their complaints. Powell also told claimant that both he and the assistant principal would be formally and informally observing her class. Powell performed a formal observation later that month and prepared a formal evaluation. Claimant responded in writing to the parents' and students' complaints, as well as to the formal evaluation.

In early November 1997, claimant began counseling with Kathleen Kosche, L.C.S.W., who assessed claimant as suffering from depression and anxiety. Kosche also referred claimant to a psychiatrist. Shortly afterwards, claimant received a Notification of Performance Deficiency. By mid-November, claimant began treatment with a psychiatrist, Dr. Martin, who diagnosed claimant as suffering from anxiety and depression. Claimant also wrote a memo to Powell discussing a conference she had with a parent, quarter grading, and performance problems she was having with some of her students. During that period in mid-November, the assistant principal informally observed claimant's Spanish class on two occasions. In late November, claimant's treating physician, Dr. Manuele, removed claimant from her job in order to treat her physical and mental health. Claimant filed a workers' compensation claim that same day.

In early December 1997, Powell completed claimant's performance evaluation and recommended a plan of

assistance. In addition, the assistant principal completed another Notification of Performance Deficiency. Powell subsequently wrote to claimant explaining that, because a sufficient number of observations had been conducted prior to claimant's departure for medical reasons, it was appropriate for him to complete a formal evaluation. That letter included a copy of the evaluation and invited claimant to meet with him to review it. Several days later, Powell completed a plan of assistance and sent it to claimant.

In February 1998, Prevenas informed claimant that he was considering a recommendation not to renew her contract for the following school year and provided claimant with an opportunity to meet with him and discuss the recommendation. Two weeks later, Prevenas notified claimant of the Board of Education's decision not to renew claimant's contract. Around the same time as the notification, claimant reported to the sheriff that two of her car tires had been slashed while in her driveway.

In April 1998, claimant was examined by Dr. Fried, a psychiatrist, for purposes of an independent medical examination (IME). *See* ORS 656.325 (allowing an insurer to direct an IME).

Liberty Northwest denied claimant's mental disorder claim. After a hearing, an administrative law judge (ALJ) set aside the denial. The Board reviewed the opinion and order and affirmed.

The Board found that one of the principal causes of claimant's mental condition was the criticism from her students and their parents. The Board cited, as examples, the two confrontations with parents in June 1997, the numerous letters sent to Powell, the information from Powell of oral criticism, and Powell's warning that a group of parents intended to confront claimant in her class. Noting that under ORS 656.802(3)(b), claimant must prove that employment conditions causing a compensable mental disorder are conditions other than those "generally inherent in every working condition," the Board concluded that the extent of criticism experienced by claimant was not "generally inherent." The Board found that those incidents showed that claimant was not just criticized, she was threatened and intimidated.

The Board also found that the actions by Powell and the assistant principal in response to complaints and criticism from parents and students were another primary factor in causing claimant's mental condition. Concerning the January 1997 letter from Powell to claimant, the Board reasoned:

"Because the letter did provide only a suggestion and did not direct claimant to teach in a different manner, we do not consider the letter as 'disciplinary, corrective or job performance evaluation' action. Consequently, whether reasonable or not, we consider it in deciding the compensability of claimant's mental disorder."

The Board also concluded that, although Powell's recommendation to withhold claimant's salary increase constituted a disciplinary action, that recommendation was premature and was therefore unreasonable. Consequently, the Board found that both the January 1997 letter and the recommendation to withhold claimant's salary increase could be considered in determining whether claimant's condition was compensable.

The Board ultimately concluded that parent and student criticism and the actions taken by the school administrators were the major contributing cause of claimant's mental disorder. Thus, because the medical opinions uniformly showed that those employment factors were the major contributing cause of that disorder, claimant established medical causation. The Board also concluded that, because the other requirements for proving the compensability of a mental disorder were not disputed on review, claimant proved compensability of the mental disorder.

Liberty Northwest advances five assignments of error. We address each in order of merit.

■　　　Liberty Northwest assigns as error the Board's finding that the principal's January 1997 letter to claimant was not a "disciplinary, corrective or job performance evaluation action." Liberty Northwest argues that the term "reasonable" qualifies the language "disciplinary, corrective or job performance evaluation actions by the employer" and broadens

the application of the statute to include letters and memorandum from supervisors that suggest or recommend that certain actions be taken by employees. Liberty Northwest further argues that the Board's interpretation emphasizes form over substance by focusing more on whether a letter contains a heading that states "performance evaluation" rather than on the content and purpose of that letter. Claimant argues that, because the letter did not contain an order or provide definitive guidance or instructions on how to act, it did not constitute a reasonable order or a corrective action.

We agree with Liberty Northwest. We fail to see how a letter from a supervisor recommending that a corrective action be taken by an employee does not constitute a "corrective or job performance evaluation action." That is particularly so in this instance considering the probationary nature of claimant's employment. The January 1997 letter stated that if certain conditions did not improve, claimant's position could be eliminated. The purpose of the letter was to help claimant improve her "rapport" with her students and make her Spanish classes more attractive to students. The letter noted deficiencies and recommended specific courses of action, some of which claimant adopted. For those reasons, the letter was a corrective action. The Board erred when it held otherwise.

■    Because the Board did not assign weight to the various causative factors when it determined that compensable work-related factors constituted the major contributing cause of claimant's mental stress, we cannot determine whether the Board's error affected its ultimate conclusion. Therefore, we must reverse the Board's order and remand for the Board to determine the reasonableness of the January 1997 letter and to reweigh the various causative factors to determine the major contributing cause of claimant's mental disorder.

■    We emphasize that our holding here is only that the January 1997 letter constituted a "disciplinary, corrective or job performance evaluation action." We offer no opinion whether that corrective action was reasonable or unreasonable. The reasonableness or unreasonableness of a corrective

action is a matter for the Board, in the first instance, to determine.

Liberty Northwest's next assignment of error is that the Board erred, as a matter of law, when it stated that "[e]mployment conditions that constitute 'reasonable disciplinary, corrective or job performance evaluation actions by the employer' are not considered in determining compensability of a mental disorder. *See* ORS 656.802(3)(b)." Liberty Northwest argues that the Board's formulation of the law improperly ignores noncompensable employment factors by not considering them at all in the major contributing cause analysis used to determine the compensability of a claim. Liberty Northwest claims that the Board weighed compensable employment factors against only nonemployment factors in its analysis. Claimant responds that the Board's statement is a correct statement of law and that it merely points out that the noncompensable employment factors enumerated in ORS 656.802(3)(b) are not to be weighed as if they were compensable employment factors. Claimant claims that the Board did enumerate and consider reasonable employment disciplinary measures that weighed against compensability of the claim.

Although the Board's statement is not necessarily incorrect, as is demonstrated by claimant's interpretation, we note that the Board's expression of the law is less than clear. Although it appears as if the Board did engage in the proper weighing process in its major contributing cause analysis—despite the unclear statement of law—we describe the proper weighing process here for purposes of clarity.

■■ The first step in that process is for the Board to place each factor causing claimant's mental disorder into one of three different categories. The first category consists of causative work-related factors that are *not excluded* by ORS 656.802(3)(b). The second category consists of causative work-related factors that *are excluded* by ORS 656.802(3)(b). The third category consists of causative factors that are not related to work. The second step requires that the Board weigh the nonexcluded work-related factors against *both* the excluded work-related factors and the non-work-related factors. If the nonexcluded work-related factors outweigh all the

other factors, the condition is considered work related and the claim is *compensable.* However, if the combined weights of the excluded work-related factors and the non-work-related factors outweigh or are of equal weight to the nonexcluded work-related factors, the claim is *not compensable.*

■      Liberty Northwest also assigns as error the Board's consideration of the incident of claimant's slashed tires and the incident involving several youths near claimant's home to establish that claimant was not just criticized, but rather was threatened and intimidated. Liberty Northwest argues that both incidents failed to meet the ORS 656.802(3)(a) requirement that compensable employment conditions exist in a "real and objective sense" because the relationship of the two incidents to claimant's work was supported solely by claimant's subjective belief that they were related. Claimant points out that the inclusion of an off-premises event as a work-related factor is not excluded by case law or statute so long as the incident flows from a person's work. Claimant argues that making a finding that those incidents were work related is part of the Board's factfinding role. Simply put, claimant argues that claimant testified to the incidents, testified as to the cause of those incidents, the Board chose to believe that testimony, and it reached the same conclusion as claimant. We agree with claimant. The Board did not err as a matter of law in considering those factors. Substantial evidence supports the Board's conclusion that those events were work related.

■      Liberty Northwest's next assignment of error is that the record does not contain substantial evidence for the Board's finding that claimant was threatened and intimidated. Liberty Northwest argues that if the two events at issue under the previous assignment of error are eliminated from the work-related factors enumerated by the Board, the remaining factors are ones that are "generally inherent in every working situation" and are therefore noncompensable. Even if our resolution of the previous assignment of error—concerning the two off-premises incidents—did not resolve this assignment of error in claimant's favor, substantial evidence exists that would permit a reasonable person to find that claimant was subjected to work-related factors that are

not "generally inherent in every working situation." In addition to the two events cited above, the Board also relied upon evidence of angry confrontations with parents, "booing" at a school assembly, the "egging" incidents, and the unjust blaming of claimant by parents for the lack of books and possible copyright infringement in reaching its conclusion. We agree with the Board that those factors are not "generally inherent in every working situation." *See Whitlock v. Klamath Cty. School District*, 158 Or App 464, 469-75, 974 P2d 705, *rev den* 329 Or 61 (1999) (discussing "generally inherent in every work situation"). The Board did not err when it concluded that claimant was intimidated and threatened at work.

■ Liberty Northwest's final assignment of error posits that the Board erred when it relied on claimant's own list of stressors, without differentiating between the compensable stressors and noncompensable stressors, in reaching the conclusion that the medical opinions uniformly showed that employment was the major contributing cause of claimant's stress. There was no error. The Board did not merely rely on claimant's list of stressors in reaching its conclusion. Liberty Northwest's argument ignores the fact that claimant's list of stressors was generated during the IME and was generated at the specific request of Liberty Northwest several months *after* claimant visited Kosche and Martin. The record indicates that Kosche and Martin did not uncritically adopt claimant's list of stressors when they evaluated claimant and reached their separate diagnoses that claimant suffered depression and anxiety from her employment. That fact was further substantiated by Martin's testimony before the ALJ. The Board did not err.

In summary, the Board erred when it found that Powell's January 1997 letter to claimant was not a "disciplinary, corrective or job performance evaluation action." We therefore reverse the Board's order and remand for the Board to determine the reasonableness of the January 1997 letter and to reweigh the various causative factors to determine the major contributing cause of claimant's mental stress.

Reversed and remanded for reconsideration.