Argued and submitted August 20, affirmed December 1, 2021

In the Matter of the Compensation of
Audrey J. King, Claimant.

Audrey J. KING,
*Petitioner,*

*v.*

GALLAGHER BASSETT INSURANCE SERVICES
and UST Global,
*Respondents.*

Workers' Compensation Board
1704559; A173989

502 P3d 1163

Claimant seeks review of an order of the Workers' Compensation Board (the board) affirming an order of an administrative law judge (ALJ) and upholding SAIF's denial of her mental disorder claim. *Held*: The Court of Appeals addressed the process for evaluating the work connection of a mental disorder claim and explained that such a claim will be found compensable if, when weighing the causal relationship of nonexcluded work-related factors against the causal relationship of statutorily excluded work-related factors and nonwork-related factors, clear and convincing evidence establishes that the nonexcluded work-related factors outweigh all other factors. The Court of Appeals rejected as inconsistent with the court's case law claimant's contention that, in considering the stress-inducing conditions of the employment, the board should evaluate whether the work environment as a whole was injurious and the major contributing cause of claimant's mental disorder, rather than separately considering each allegedly causative aspect of the work environment. The board is delegated responsibility under ORS 656.802(3)(b) to determine whether the "conditions [are] generally inherent in every working situation" for purposes of assessing the work connection of alleged stress-inducing circumstances. The court held that the board did not err in excluding, as "generally inherent," two factors alleged to be stress-inducing. The court upheld the board's determination that claimant did not establish her allegations relating to the stress-inducing conduct of her supervisor. Finally, the court upheld the board's determination that the claim failed for lack of proof of medical causation.

Affirmed.

Julene M. Quinn argued the cause for petitioner. On the briefs were Nathan R. Goin and Colin Rockney Hackett Law, P.C.

Kevin E. Domanico argued the cause for respondents. Also on the brief were Thomas P. Busch and MacColl Busch Sato, PC.

Before Tookey, Presiding Judge, and James, Judge, and Aoyagi, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board affirming an order of an administrative law judge (ALJ) and upholding SAIF's denial of her mental disorder claim. Reviewing the board's order for errors of law and substantial evidence, *Multnomah County v. Obie*, 207 Or App 482, 484, 142 P3d 496 (2006); ORS 656.298; ORS 183.482(7), (8), we conclude that the board did not err, and affirm.

We draw our summary of the facts from the board's order affirming the ALJ's detailed findings. Claimant is a software validation engineer. In January 2017, claimant began working for employer UST Global, testing and validating software for anomalies. Claimant described her work as hectic and stressful but also fun.

In April 2017, employer assigned claimant and approximately 40 other employees to work on a project for Intel that involved testing computer hardware at Intel's work site. The board, in affirming the ALJ, found that that type of work is generally described as fast-paced, hectic, chaotic, and stressful.

Employees were divided into teams, with each team being responsible for a group of computers. Claimant was the "point-of-contact" (POC) person for a team, and reported to the lead POC person, her direct supervisor, Dash. Dash reported, in turn, to Miles, employer's manager for the project.

Many challenges arose during the project, among them rapidly changing requirements from management that prevented employees from completing their regular tasks. Employees became frustrated by shortages of workstations, electrical outlets, and writing materials. Work schedules initially were flexible but became fixed. Claimant's team members became frustrated by what they perceived as random, disorganized, and conflicting directions from management.

Shortly after they began working together, claimant and Dash began to have difficulties. In affirming the ALJ, the board found that there were differences in communications styles between claimant and Dash. Dash did not

explain the reasons for his directions, as claimant expected he would do. Claimant believed that Dash intentionally misrepresented her actions to others and sabotaged her work by not allowing her to use software tools to aid in identifying hardware problems, by erasing her white boards, and by assigning machines to her team that were not functioning properly. Claimant believed that Dash unjustifiably blamed her team for problems. Claimant testified that Dash would become angry if she did not respond immediately to his emails and would come to her desk for a quick response, interrupting claimant's other work.

Claimant testified that she began experiencing symptoms of her mental disorder by mid-May 2017. Claimant's team could not keep up with the work, and employer fell behind on the project. Claimant was admonished several times by Dash and by Miles for, among other issues, poor attendance and a failure to provide timely status reports.

By mid-June, conflict between claimant and Dash came to a head. Management at Intel had become dissatisfied with employer's progress. Claimant was assigned to work on more machines with fewer resources. In a meeting with POC employees, a manager at Intel yelled at claimant. Claimant testified that after that experience, she became fearful, experienced chest pains and weight loss, and felt scattered and panicky. At claimant's request, she was removed as a POC.

Claimant began seeing Dr. Losk, a clinical psychologist, for what she described to him as "an extremely high stress work situation." Claimant described her symptoms to Losk, including hair loss and an inability to sleep. Losk found claimant to be anxious, nervous, distressed, and pressured. Losk noted that claimant was taking two medications, but he was not aware that claimant also was taking a prescribed weight loss medication. He determined that claimant was suffering from an "adjustment disorder with anxiety," as a result of a "hostile and abnormal work environment," and suggested that claimant might need to take some short-term disability leave because of the stress of her work, which he said was adversely affecting her health.

Claimant saw Losk a week after her first appointment and she reported having lost 13 pounds over the previous six weeks. Losk's report does not indicate whether he knew that claimant was on medication for weight loss.

After her decision to step down as POC, claimant began to have conflict with her new POC, who reported to Dash and Miles that claimant was not performing her job appropriately and lacked professionalism. After that report, Dash and Miles placed claimant on a performance improvement plan (PIP), with "performance challenges" that were to be addressed, including "unprofessional behavior, time management problems, mistakes, and poor communication skills." Miles then suggested to claimant that she withdraw from the team and place herself in a "talent pool" to be assigned to a new project, and he would withdraw the PIP. Claimant agreed and was off work beginning July 12, 2017.

On July 18, 2017, claimant saw the doctor who had prescribed the weight loss medication and reported that she had lost 23 pounds. On that same date, claimant saw Losk, and reported to him that she continued to have high anxiety, irritability, loss of sleep, and elevated blood pressure, and had lost 23 pounds due to a low appetite. Losk opined that those symptoms were all signs of an acute stress reaction to her work situation. Losk saw claimant again on July 26, after she had been off work for two weeks, and again on August 18. At both visits, claimant continued to report symptoms of extremely high stress, including high anxiety, irritability, poor sleep, headaches, and weight loss.

Employer laid claimant off from work on August 25, 2017, due to a staff reduction, and, on August 28, 2017, claimant filed a workers' compensation claim for a mental stress disorder. Employer denied the claim, and claimant requested a hearing.

Claimant's mental disorder claim is considered to be a claim for an occupational disease. ORS 656.802(1)(a)(B) (defining as an occupational disease "[a]ny mental disorder, whether sudden or gradual in onset, which requires medical services or results in physical or mental disability or death"). To meet her burden to establish its compensability, claimant was required to prove, by clear and convincing

evidence, that employment conditions were the major contributing cause of her condition. *Obie*, 207 Or App at 489; ORS 656.802(2)(a) ("The worker must prove that employment conditions were the major contributing cause of the disease."); ORS 656.266(1) ("The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker.").

Claimant's claim is also subject to ORS 656.802(3), which provides, in part:

> "Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

> "(a)   The employment conditions producing the mental disorder exist in a real and objective sense.

> "(b)   The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

> "(c)   There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

> "(d)   There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

Under ORS 656.802, only employment-related conditions may be considered in determining whether a mental disorder is related to the employment; nonwork-related factors are excluded from consideration. *See Obie*, 207 Or App at 491 ("[I]n order to establish that her mental disorder arose out of her employment, claimant must show that work-related stressors, as opposed to personal stressors, were the major contributing cause of her condition."). Additionally, certain work-related conditions are also excluded. ORS 656.802(3)(b) excludes from consideration those work conditions "generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by

the employer." In *Whitlock v. Klamath County School Dist.*, 158 Or App 464, 475, 974 P2d 705 (1998), *rev den*, 329 Or 61 (1999), we held that "conditions generally inherent in every working situation" refers to stress-producing conditions "common to the full range of employment."

In *Liberty Northwest Ins. Camp. v. Shotthafer*, 169 Or App 556, 562, 10 P3d 299 (2000), we described the process for evaluating the work connection of a mental disorder claim. The first step is to determine whether the alleged causative factors actually exist and are work-related. Then, each causative factor is placed into one of three categories: (1) work-related factors that are not excluded by ORS 656.802(3)(b) because they are not common to the full range of employments; (2) work-related factors that are excluded by ORS 656.802(3)(b) because they are common to the full range of employments; and (3) factors that are not work-related. *Id.* at 565. The next step in the analysis is to consider together all of the nonexcluded work-related factors to determine whether they outweigh the excluded factors. *Id.* A mental disorder claim will be found compensable if, when weighing the causal relationship of nonexcluded work-related factors against the causal relationship of both the statutorily excluded work-related factors and nonwork-related factors, clear and convincing evidence establishes that the nonexcluded work-related factors outweigh all other factors. *Id.* at 566.

In support of her claim, claimant offered Losk's opinion that claimant's "hostile and abnormal work environment" was the cause of her mental disorder. Losk weighed as significant causative factors the lack of appropriate workspace, changing and inconsistent direction from management, Dash's apparent attempts to undermine claimant, and, most of all, claimant's berating by the manager at Intel. In addition to Losk's opinion, claimant offered the testimony of several coworkers, who the ALJ found credibly testified consistent with claimant's description of the work environment as chaotic and stressful, and who shared claimant's perception that Dash did not respect or treat her well.

Employer offered the testimony of other employees, who agreed that the work environment was stressful but

were not as critical of the environment as claimant's witnesses. Miles, who the ALJ found to be credible, testified that such difficulties and challenges are typical in the industry. Dash, who the ALJ also found to be credible, testified that he bore no ill will against claimant and that it would have been counterproductive for him to undermine her.

Employer also offered into evidence claimant's past medical records, which the board, in affirming the ALJ, found reflected that claimant had been on prescription medication for weight loss since December 2016, before she began working for employer, and that, in the past, before working for employer, claimant had experienced symptoms similar to those leading up to her claim. Losk expressed the opinion that claimant's past medical history had no relationship to her current claim and that a "hostile and abnormal workplace environment" was the cause of her condition.

At employer's request, claimant had been examined by Dr. Wicher, a psychologist. Wicher, like Losk, diagnosed an adjustment disorder with anxiety. Wicher also offered the opinion that, if Losk was unaware that claimant was on prescription medication for weight loss, that would have negatively impacted his ability to assess the extent to which her weight loss was attributable to stress from work. Wicher was of the opinion that claimant's work conditions were objectively stressful, but she attributed a greater portion of claimant's distress to a tendency to react strongly to conflict and stress.

The ALJ found credible all of the witnesses who testified at the hearing. He found that any differences between claimant's testimony and that of other employees were the result of differences in perception, not deception.

The ALJ rejected claimant's suggested approach that all of the alleged stressful circumstances should be considered in the aggregate to determine whether employment conditions overall were stressful and the claim compensable. Instead, the ALJ separately evaluated each alleged work-related circumstance that Losk identified as contributing to claimant's mental stress. In the nonexcluded work-related category, the ALJ included the lack of appropriate workspace

and the berating of claimant by the manager at Intel. In the excluded work-related category, the ALJ included frustrations with management, which the ALJ found were "generally inherent" in all employments. The ALJ also placed in the excluded work-related category the disciplinary measures imposed on claimant, finding that they were "reasonable corrective action."[1] The ALJ excluded from the calculus claimant's allegations about Dash's behavior toward her—intentional undermining and mistreatment—finding that those allegations had not been established by clear and convincing evidence.[2] Thus, in the nonexcluded category of causative factors, the ALJ placed only the workspace issue and the manager at Intel berating claimant at the meeting of the POCs.

The ALJ also evaluated the medical evidence to determine whether it established, by clear and convincing evidence, that the nonexcluded factors, when compared to excluded factors, were the major contributing cause of claimant's stress disorder. Claimant had relied on Losk to establish the medical causation of her claim. The ALJ discounted the persuasiveness of Losk's opinion because: (1) Losk had included in the causation calculus factors that the ALJ had determined either did not exist (the supervisor's behavior) or were statutorily excluded (frustrations with management); (2) it was unclear whether Losk had reviewed claimant's entire medical record, which showed that, before her employment with employer and as recently as 2016, claimant had experienced symptoms similar to those that Losk attributed to work stress; and (3) Losk was unaware that claimant had been prescribed weight loss medication. The ALJ reasoned that "[i]t is impossible to know how much of [Losk's] opinion is based on his attribution of the cause of claimant's significant weight loss" during the period in question. In light of those shortcomings, the ALJ found that Losk's opinion was not persuasive, and concluded that claimant had not met her burden of proof.

---

[1] Claimant does not provide any argument on appeal relating to the board's exclusion of disciplinary measures from the causation calculus.

[2] The ALJ found: "I am unable to conclude as a factual matter by clear and convincing evidence that [claimant's supervisor] had a personal issue with claimant and was trying to undermine her."

The board affirmed the ALJ, with supplementation. The board adopted the ALJ's credibility assessments. And, like the ALJ, the board rejected claimant's assertion that the various alleged stress-inducing circumstances of work should be considered together, as a single injurious, hostile, and abnormal workplace. Instead, like the ALJ, the board viewed the various alleged stressors as "several unrelated work incidents over a matter of months." The board adopted most of the ALJ's categorizations of the various stressors, with the exception of the stressor relating to the inadequacy of workspace; the board found that the workspace was an "open-concept" plan that was generally inherent in all employment environments.

The board agreed with the ALJ's evaluation of Losk's opinion, concluding that Losk had erroneously included in the causation calculus factors that were statutorily excluded or that the board found were generally inherent in every work environment, including management's changing expectations, management's aggressive style, and conflicting instructions. The board supplemented the ALJ's opinion by explaining that it was not clear that Losk had based his opinion on claimant's complete medical history. Additionally, the board found that Losk had failed to identify the specific work-related stressors that he believed had caused claimant's adjustment disorder. Finally, the board found that Losk had not weighed the factors that he believed had caused claimant's adjustment disorder against the excluded factors and the nonwork-related factors. The board ultimately affirmed the ALJ's conclusion that claimant had failed to meet her burden to prove the compensability of the claimed mental disorder by clear and convincing evidence.

On judicial review, it is undisputed that claimant's diagnosed adjustment disorder is a generally recognized mental disorder. ORS 656.802(3)(c). The dispute on review concerns the sufficiency of proof of the other elements of the claim as described in ORS 656.802(3): (1) whether one of the alleged stress-inducing conditions—the supervisor's intentional ill-treatment of claimant—existed in a "real and objective sense," ORS 656.802(3)(a); (2) whether the established the stress-inducing conditions are not "generally inherent in every working situation," ORS 656.802(3)(b);

and (3) whether claimant established the work connection by "clear and convincing evidence." ORS 656.802(3)(d).

Claimant challenges the board's determination, in affirming the ALJ, that she did not establish her allegations relating to Dash's alleged misbehavior, ill-treatment, or attempts to undermine her. *See* ORS 656.802(3)(a) (stress-inducing conditions must exist in a "real and objective sense"). We have reviewed the record and conclude that the board's determination that claimant did not establish her allegations relating to Dash is supported by substantial evidence.

Claimant's overarching argument on judicial review relating to ORS 656.802(3)(b) (the stress-inducing conditions must not be "generally inherent in every working situation") is that, in considering the stress-inducing conditions of the employment, the board should have evaluated whether the work environment *as a whole* was injurious and the major contributing cause of claimant's mental disorder, and erred as a matter of law in separately considering each allegedly causative aspect of the work environment. Claimant concedes that her mental health condition is "the product of a variety of work-related stressors that, some of which, when analyzed individually, may seem generally inherent in any work situation"; but she urges that "the overall work environment cumulatively resulted in an industrial setting that, on the whole, was anything but a 'generally inherent' work situation." Claimant asserts that when the overall work environment, described by Losk as "hostile and abnormal," is considered as a single stress-inducing factor, it is clear that the conditions of employment, *in toto*, were not generally inherent in every work situation.

Claimant's analytical proposition is inconsistent with our case law, *Shotthafer*, 169 Or App at 565, and with ORS 656.802(3), which require that, *preliminary* to weighing the overall causal contribution of the employment, each alleged stress-inducing circumstance or condition must be evaluated separately to determine whether it falls within an excluded or nonexcluded category. Only stressors determined to be nonexcluded are weighed against excluded

stressors to determine the compensability of the mental stress claim. *Shotthafer*, 169 Or App at 565. Claimant's contention that the work environment as a whole should be considered as a separate causal factor in and of itself would undermine that analysis, because the overall work environment could include stress-inducing factors that should be excluded under ORS 656.802(3).[3] As we emphasized in *Havlik v. Multnomah County*, 164 Or App 522, 992 P2d 942 (1999), the question under the statute is "whether the working *conditions that are directly responsible for a claimant's mental disorder* are generally inherent in every working situation." (Emphasis added.) We reject claimant's contention that the board incorrectly focused on the specific work-related conditions that the board found to have contributed to claimant's mental stress disorder.

Assuming, as we have concluded, that the board did not err in separately addressing each alleged stress-inducing condition to determine whether it should be included in the causation calculus, claimant contends, in the alternative, that the board, in affirming the ALJ, erred in excluding as "generally inherent" two of the alleged stress-inducing factors: (1) management's changing and inconsistent direction; and (2) the inadequate workspace provided by Intel. As we said in *SAIF Corp. v. Campbell*, 113 Or App 93, 96, 830 P2d 616 (1992), the board is delegated responsibility under ORS 656.802(3)(b) to make the determination what "conditions [are] generally inherent in every working situation." Within the board's delegated responsibility is the authority to determine how broadly or narrowly one defines an alleged stress-producing factor, based on the board's identification of "the conditions that are directly responsible for the worker's stress." *Havlik*, 164 Or App 528. We, in turn, review the board's determination for whether it "appears to be within the legislative policy that inheres in the statutory term." *Fuls v. SAIF*, 321 Or 151, 162, 894 P2d 1163

---

[3] In *Whitlock*, we cautioned against overgeneralizing the source of the work-related stress, reasoning that "if categories are drawn sufficiently broadly, virtually any stress-inducing employment condition could be characterized as a sub-species of a much broader condition common to all employments." 158 Or App at 474. Conversely, we said that the alleged source of stress should not be described so narrowly as to be limited to the claimant's specific work circumstances. *Id*. at 473.

(1995).[4] Thus, on review, we do not reweigh the evidence or substitute our judgment for that of the board as to its categorization of work-related stressors, so long as the board's findings and conclusions are supported by substantial evidence and substantial reason, and the board's categorization is consistent with the legislative policy that inheres in the statutory term.

The court said in *Fuls* that, "[f]rom the context and the legislative history," it could determine that the legislative policy of the 1987 amendment of ORS 656.802(3) to add the criterion regarding "conditions generally inherent in every working situation," Or Laws 1987, ch 713, § 4, was "to curtail compensable claims for mental disorders based on on-the-job stressors." *Fuls*, 321 Or at 161; *see Havlik*, 164 Or App at 527. Thus, as we held in *Whitlock*, conditions that are common to "the full range of employments" are generally excluded from the causation calculus. 158 Or App at 475. The board, in affirming the ALJ, reasoned that "frustrations at work, including those arising from management directives that are not understood by workers, are generally inherent." We are persuaded that the board correctly identified "frustrations at work" as "the condition that is directly responsible for claimant's stress," *Havlik*, 164 Or App at 527, and we conclude that the board's determination that work frustration is a circumstance that is "generally inherent" in the full range of employments is within the legislative policy to "curtail compensable claims for mental disorders based on on-the-job stressors." *Fuls*, 321 Or at 161.

Claimant asserts that the board erred in its description of the Intel-provided workspace as an "open-concept

---

[4] Circumstances that the board has found in its orders to be "generally inherent" include understaffing, increasing work demands and responsibilities, "strict" management styles, interpersonal conflicts, and personality clashes. *See Mulunesh Bahta*, 71 Van Natta 728, 729 (2019) (conditions generally inherent in every workplace include a supervisor's management style, change of work assignments, change of supervision, and disappointment at being bypassed for a promotion); *Sandra Bucksen*, 62 Van Natta 146, 150-51 (2010) (employer's disciplinary and corrective actions, including work plan, suspension without pay, employer monitoring of arrival/departure time); *Cynthia I. Cobb*, 48 Van Natta 2296 (1996) (increasing demands and responsibility); *Tamara L. Oates*, 47 Van Natta 1417 (1995) (understaffing); *Gary W. Helzer*, 47 Van Natta 143 (1995) (new manager's "stricter" management style); *Gregory L. Brodell*, 45 Van Natta 924, 925 (1993) (interpersonal conflict; frustrations; boredom; concerns over possible termination).

office" and its categorization of the stress allegedly caused by that workspace as generally inherent in every working situation and, therefore, "excluded." We have reviewed the record and conclude that, although substantial evidence may support the board's characterization of the workspace as an open-concept office, it is not apparent from the board's order that the board properly considered the alleged stressful aspects of the particular workspace, as found by the ALJ—the lack of adequate physical space for all employees and the shortage of electricals outlets and writing materials necessary to complete the assigned work. Thus, the board's conclusion that the workspace should be categorized as a statutorily excluded factor is not supported by substantial reason.[5]

But the board's error does not require reversal. That is because the board correctly held that the claim fails for lack of proof of medical causation. *See* ORS 656.802 (3)(d) (requiring "clear and convincing evidence that the mental disorder arose out of and in the course of employment"). The medical causation component of claimant's mental disorder claim presents a complex medical question that must be resolved on the basis of expert medical evidence. *See Uris v. Comp. Dep't.*, 247 Or 420, 426, 430 P2d 861 (1967). The only medical evidence offered by claimant in support of her claim was the opinion of Losk. The board identified several shortcomings in Losk's opinion that led it to find the opinion unpersuasive. Substantial evidence supports that determination. For example, Losk included as significant causative factors management's changing and inconsistent direction and the supervisor's attempts to undermine claimant, both of which, as we have described, the board correctly excluded. And, because Losk's opinion was the only medical opinion in the record in support of the compensability of the claim, we conclude that the board did not err in determining that claimant had not met her burden to prove by clear and

---

[5] We note that in reaching its conclusion that the open-concept workspace is "generally inherent," the board referred to evidence that that style of workspace is common in "the industry." We remind the board that, as the ALJ correctly noted, the inquiry is whether the circumstance is common to *all* employments, not merely the particular employment involved in the case. *See Whitlock*, 158 Or App at 475.

convincing evidence that work stress was the major contrib-
uting cause of her mental disorder.[6]

      Affirmed.

---

[6] In view of our conclusion, we reject without further discussion that the
board erred in failing to assess a penalty under ORS 656.262(11)(a) for employer's
alleged unreasonable denial of the claim.